VIRGINIA COMBS ET AL. v. MOBILE & OHIO RAILROAD COM-
PANY.

[46 South., 168.]

1. **RAILROADS.** *Person killed on track. Evidence. Experts.*

In an action against a railroad company for the alleged wrongful
death of a decedent killed by a locomotive striking him, the tes-
timony of an experienced railroad man, who had made observa-
tions of the locality from the cab of an engine, that the obstruc-
tions to a clear view of the track at the point where decedent
was killed were not such as to have prevented the engineer in
charge of the locomotive from seeing the decedent on the track,
is admissible.

2. **SAME.** *Licenser and licensee of track. Injuries inflicted on employe
of other.*

Where one railroad company licensed another to run trains over
its tracks, an employe of the licensee, killed on the track by a
train of the licenser, was not the latter's employe.

FROM the circuit court of Lauderdale county.

HON. ROBERT F. COCHRAN, Judge.

Mrs. Combs and others, appellants, were plaintiffs in the
court below; the railroad company, appellee, was defendant
there. From a judgment in defendant's favor plaintiffs ap-
pealed to the supreme court.

The suit was for the alleged wrongful killing of one Jennings
Combs, a son of Mrs. Combs and brother of the other appellants.
After all the testimony was in, the court gave a peremptory in-
struction in favor of the appellee railroad company. It ap-
peared that Jennings Combs was an employe of the St. Louis
& San Francisco Railroad Company as flagman on a freight
train; the latter company had an agreement with the Mobile
& Ohio Railroad Company, defendant, to run its trains of cars
over the track of defendant between Meridian and Tupelo; on
the 19th day of August, 1906, deceased left Meridian on one of

the St. Louis & San Francisco trains going north toward Tupelo, and had reached Shuqulak, a point some fifty miles north of Meridian, when the train stopped on the main line because of some trouble with the engine; it was about dark, and deceased was instructed to go back and flag a freight train of the defendant following the St. Louis & San Francisco train, and about due; deceased took red and white lights and proceeded to the rear end of his train, and thence went down the track about a quarter of a mile, and stopped, both lamps burning and in plain view; the men in charge of the St. Louis & San Francisco train moved it to the depot on the side track in order to let the defendant's train pass, and whistled to call in Combs, the flagman; the deceased was seen to turn in the middle of the track as though starting back to his train in answer to the call, but in a few minutes it was apparent that he had stopped and the engineer of his train thereupon repeated the call, and again Combs was seen to be moving toward his train; the lights Combs carried were plainly seen and defendant's train was heard and seen coming, apparently paying no attention to the lights of Combs or to torpedoes which he had placed on the track; the conductor on the St. Louis & San Francisco train displayed a lighted fuse on the rear of his caboose, and defendant's train then whistled, answering the signal, and began to slow up, and came to a stop. The dead body of Combs and two fuses were found several hundred yards below the point where defendant's train stopped. There were no witnesses to the killing; the engineer on the defendant's train did not see either the deceased or his signals and did not know the train had run over and killed deceased until the conductor on the St. Louis & San Francisco train asked him if he had seen anything of the flagman, when he went to the engine to examine it, and found part of decedent's body in the machinery of the engine. Just south of where deceased was seen last, there was a cut four or five feet deep and a curve in the track. On the engine of the defendant there was an electric headlight, which lighted the track for a long distance in front

of it. The plaintiffs endeavored to prove by witness Chambers, who is an experienced railroad man, and who had made observations from the cab of an engine, that the obstructions were not such as to prevent the engineer from seeing Combs on the track at the place where he was struck by the engine. The court declined to permit this proof to be made.

Counsel for appellee contended that Code 1906, § 1985, did not apply in this case, since the killing occurred prior to October 1, 1906, when that code went into effect and that Code 1892, § 1808, would govern. The two sections are identical, except that the last sentence of section 1985, which is italicized, appears for the first time in the Code of 1906. Section 1985 is as follows: "*1985.* (1808.) *Injury to Persons or Property by Railroads Prima Facie Evidence of Want of Skill, etc.*—In all actions against railroad companies for damages done to persons or property, proof of injury inflicted by the running of the locomotives or cars of such company shall be *prima facie* evidence of the want of reasonable skill and care on the part of the servants of the company in reference to such injury. *This section shall also apply to passengers and employes of railroad companies.*"

*W. N. Ethridge* and *Amis & Dunn,* for appellants.

There are two facts which the circumstances of this case establish.

*First.* That the deceased was killed by the running locomotive of the defendant railroad company.

*Second.* That no person saw the killing, and that there was no eye witness to the tragedy.

Code 1906, § 1985, provides that in all cases against railroad companies, for damages done to persons or property, proof of injury inflicted by the running of the locomotive or cars of such company shall be *prima facie* evidence of the want of reasonable skill and care on the part of the servants of the company, in reference to such injury. The court below, while recognizing the force of the statute, took the view that the testimony in the

case overcame the presumption of the statute, and that, looking
to all of the testimony, it appeared that the railroad company
was not negligent in the operation of its locomotive and cars,
and, therefore, the plaintiff could not recover. We think the
court was wrong in taking this view of the case. It should be
borne in mind that no witness undertook to say what the de-
ceased was doing at the time he was struck by the engine. One
witness testified that he had gone back to signal a train of de-
fendant, then presently due to arrive at the scene of the acci-
dent; that he went on this errand in the performance of his
duties as a flagman on the train on which he was employed.
That just before the train which killed him came into sight, the
witness saw the lights from lanterns which he supposed were in
the hands of the deceased, on the track at or about the place
where the deceased was struck; that witness saw these lights
move as though the deceased turned around with the lanterns in
his hands. There was some testimony to the effect that a burned
fusee was found near the place at which the deceased was struck
and killed, and the engineer in charge of the train said something
in his testimony, about having seen a burning fusee near the
track, and testified further, that he saw the light of a fusee on
what he took to be the rear end of the train on which the de-
ceased was working. This engineer stated that he understood
the fusee to be a signal to him, indicating danger, and that he
kept his eye on the fusee and not upon the track before him. In
other words, the engineer's testimony, taken as a whole, leads
one irresistibly to the conclusion that his attention was attracted
to the burning fusee on the rear end of the train of cars, some
distance ahead of his train, and that he watched the light,
and did not observe the condition of the track over which he was
running at all. The deceased was killed after this signal of dan-
ger was seen by the engineer. He was killed by the running
locomotive in charge of this engineer, and yet, notwithstanding
he had two lighted lanterns which were upon the track, and
which were broken up by the train as it passed over them, the

engineer testified that he did not see even these lights, nor the deceased, notwithstanding the warning of danger given by the lighted fuse on the track in advance of him. We submit that this testimony was not sufficient to overcome the *prima facie* case made by the statute. This court in the case of *Railroad Company* v. *Brooks,* 85 Miss., 269, 38 South., 40, says: "It was shown, beyond peradventure, that the injury was inflicted by the running of the train (as in the case at bar). This was *prima facie* proof of negligence authorizing a recovery by plaintiff. To overcome this statutory presumption, it devolves upon the appellant to exculpate itself, by establishing, to the satisfaction of the jury, such circumstances of excuse as would relieve it from liability. But this statutory presumption cannot be overthrown by conjecture. The circumstances of the accident must be clearly shown, and the facts, so proven, must exonerate the company from blame. If the facts be not proven, and the attendant circumstances of the accident remain doubtful, the company is not relieved from liability, and the presumption controls."

It was not contributory negligence *per se* for the deceased to have been on the track at the point where he was killed. *Vicksburg, etc., R. R. Co.* v. *McGowan,* 62 Miss., 696.

In the case of *Vicksburg, etc., R. R. Co.* v. *Phillips,* 64 Miss., 704, 2 South., 537, the court in applying the statute which we invoke here says: "If proof of injury inflicted by the running of locomotive or cars shows the circumstances and furnishes exculpation from the presumption of want of care and skill, created by the statute, that is sufficient. The statute does not require the company to furnish exculpatory evidence when the facts shown acquit of blame. It means that injury inflicted unexplained calls for exculpation, for it imputes blame in every case of injury inflicted by the running of locomotive or cars until the facts shown relieve from the imputation. When the facts appear, no matter how, it is a question determinable from them whether or not there was want of reasonable skill and care."

This latest case which has come to our attention where the statute in question was applied, is the case of *Yazoo, etc., R. R. Co.* v. *Landrum,* 89 Miss., 399, 42 South., 675. In that case the injured man was found by the track of the railroad near the depot unconscious with injuries on his head, body and feet; the court finding that the circumstances clearly showed that his injuries were caused by the running of the train. The railroad company defended on the ground that the injured man was a trespasser, and under the influence of liquor, and introduced some testimony tending to show that the deceased, prior to the accident, had been walking between the tracks and appeared to be under the influence of liquor, and that the men who carried the injured man from the track to the hotel, had smelled liquor on him. It was further contended in that case that Landrum was trying to board the moving train when he received his injuries which resulted in his death. The court saw fit to submit the case to the jury, with instructions which permitted it to decide whether the evidence offered by the railroad company was sufficient to overcome the statutory presumption of liability, and this court decided that the circuit court was right, saying that the statute imposed liability upon the railroad company, since the evidence clearly showed that Landrum was killed by the running of the cars, unless the railroad company met the burden imposed by the statute, and showed clearly the facts attending the injury, and by such showing exonerated itself from blame.

We recognize that each case must depend, in large measure, upon its own facts, but it does seem to us that the court went too far in holding that the circumstances in this case, as a matter of law, overcame the *prima facie* case in favor of the plaintiffs, and in view of the principles announced by this court, in applying the statute, to the various cases as they have been presented, it was manifestly error on the part of the circuit court to have given the peremptory instruction for the defendant.

*Miller & Baskin,* for appellee.

There is no material conflict in the evidence of this case. In other words, the facts are undisputed. Counsel lose sight of the fact that there was something due from Combs in order to protect himself by stepping off of the track when they present such ample proof of the bright electric light upon the engine and the straight track, thereby intending to hold the managers of the train to the knowledge that there was something on the track and to stop the train. This is a two-edged sword. If the track was straight and it was the duty of the managers of the train to keep a sharp look-out and not run over anybody on the track, then it was equally the duty of Combs to keep a sharp look-out for the train and get off the track when he saw it coming. He was not sent back to collide with the engine and thereby stop it, but was sent back to warn the incoming train of the danger ahead so that it might be stopped.

Combs was charged with the duty of taking care of himself. What reason could there be why he, a man in perfect health, a young man only twenty-nine years old with railroad experience and the instinct of self-preservation, did not get off the track and escape with his life? He must have been asleep.

It is a condition precedent to the right of one to recover against another for negligence to show that he was himself not guilty of negligence at the time the accident occurred. He cannot excuse himself from the duty which devolves upon him to exercise ordinary prudence by indulging in the supposition as to what would be the conduct of another, but he must safeguard himself by exercising at all times that care which an ordinary man would exercise under the same circumstances.

Counsel insist, however, that under Code 1906, § 1985, they had a *prima facie* case, but they did not stand upon this *prima facie* case, they introduced the facts, and if we were to concede that they could invoke section 1985, still the presumption under this section must yield to the facts, and the facts were duly shown by the plaintiff's own witnesses in this case. Besides, we sub-

mit, that this Code 1906, § 1985, does not apply in this case for the reason that this killing occurred on the 19th day of August, 1906, prior to the taking effect of the code containing section 1985. Combs was an employe of the railroad company and section 1985 was made to apply for the first time to an employe or servant of a railroad company. This act is not retroactive and is therefore inapplicable to this case, because the killing occurred before section 1985 applicable to employes became a law.

WHITFIELD, C. J., delivered the opinion of the court.

It was error to exclude the testimony of Chambers to the effect that there was no obstruction which would have prevented the engineer from seeing Combs.

The point made by the learned counsel for the appellee that Code 1906, § 1985, does not apply in this case, because the killing here occurred prior to the taking effect of the Code 1906, is not tenable, for the reason that Combs was not an employe of the Mobile & Ohio Railroad Company, but of the St. Louis & San Francisco road, and it is the Mobile & Ohio Railroad Company which is the defendant here.

On the whole case, we think it was error on the part of the court below to give the peremptory instruction for the defendant. The case should have gone to the jury, for settlement by them of the questions of fact as to negligence and contributory negligence, under proper instructions from the court.

*Reversed and remanded.*