CASES ARGUED AND DECIDED

IN THE

# SUPREME COURT OF MISSISSIPPI

AT THE

## OCTOBER TERM, 1911.

E. L. FULLER ET AL. *v.* ILLINOIS CENTRAL RAILROAD COMPANY.

[56 South. 783.]

1. CONTRIBUTORY NEGLIGENCE. *Pleading. Sufficiency.*

A plea of contributory negligence which simply alleges that "the alleged injuries complained of in plaintiff's declaration, and each count thereof, if any, were the direct and proximate result or cause of deceased's own contributory negligence without any fault whatever on the part of the defendant," is bad because it does not set up the facts which constitute the contributory negligence.

2. RAILROADS. *Trespassers on track. Liability.*

All that is required of a railroad company as against a trespasser is the abstention from wanton or willful injury or that conduct which is characterized as gross negligence.

3. SAME.

Although the injured party may be guilty of contributory negligence, yet this is no defense, if the injury was willfully wantonly, or recklessly done, or the party inflicting the injury was guilty of such conduct as to characterize it as gross.

(705)

4. CONTRIBUTORY NEGLIGENCE.  *Last clear chance.*

The contributory negligence of the party injured will not defeat the action if it is shown that the defendant might, by the exercise of reasonable care and prudence, have avoided the consequence of the injured party's negligence. This principle is known as the doctrine of the "last clear chance."

5. COMPARATIVE NEGLIGENCE.  *Laws* 1910, *chapter* 135.  *Applicability.*

Laws of 1910, chapter 135, establishing the doctrine of comparative negligence, is inapplicable to a personal injury sustained prior to the passage of the act.

6. INJURY TO PERSONS BY RUNNING TRAINS.  *Code* 1906, *section* 1985.

Code of 1906, section 1985, providing that proof of the infliction of personal injury by the running of cars, shall be *prima facie* evidence of want of reasonable care on the part of the railroad company, is applicable and applies in cases where there is evidence of plaintiff's contributory negligence as well as in cases where there is no such evidence. It also applies when the issue is whether the plaintiff's or the defendants' negligence was the proximate cause of the injury.

7. SAME.

The presumption of liability created by Code of 1906, section 1985, must yield to the facts, and where all the facts are in evidence, and there is no conflict, the court may draw a conclusion based on the facts.

8. CODE OF 1906.  *Section* 1985.  *Injury to persons on track.*  *Evidence.*

In order for a railroad company to overcome the statutory presumption raised by Code of 1906, section 1985, it devolves upon the company to exculpate itself by establishing to the satisfaction of the jury such circumstances as will relieve it from liability. The statutory presumption cannot be overcome by conjecture. The circumstances of the accident must be clearly shown and the facts so proven must exonerate the company from blame. If the facts be not proven and the attendant circumstances remain doubtful the company is not relieved from liability and the presumption controls.

9. RAILROADS.  *Trespass on track.*  *Negligence.*

When persons in charge of a train discover the perilous position of one on the track through a trespasser it is their duty to use reasonable care to prevent the injury and the failure to do so is reckless or wanton negligence.

10. SAME.

>   In such case positive, direct evidence as to the time when the
>   injured party was first seen, and as to the skill and diligence
>   used thereafter to avoid injury is not indispensable. These
>   facts may be proved by circumstances and are inferences to be
>   drawn by the jury in applying common observation and ex-
>   perience.

11. SAME.

>   Warning to a person seen on a railroad track must be reasonable
>   and timely but what is reasonable and timely warning may
>   depend on many circumstances.

12. RAILROADS. *Injury to person on track. Contributory negligence.*

>   One going upon a railroad track at a private crossing does not
>   forfeit his right to be warned simply because he goes on the
>   track in front of an approaching train.

13. RAILROADS. *Operation of trains. Care required.*

>   Where the engineer in charge of a train sees a traveler approach-
>   ing the track or one who is on the track, he may ordinarily act
>   on the assumption that such party will get out of danger, but
>   an engineer who sees that the traveler is going to cross the
>   track and thereby place himself in danger, cannot act on this
>   assumption, but must exercise reasonable care to prevent injury
>   to him.

APPEAL from the circuit court of Attala county.
HON. G. A. MCLAIN, Judge.

Suit by E. L. Fuller et al. against the Illinois Cen-
tral Railroad Company. From a judgment for defend-
ant, plaintiff appeals.

The facts are fully stated in the opinion of the court.

*J. G. Smythe, Luckett & Guyton, Teat & Mills, S. L.
Dodd* and *Flowers, Alexander & Whitfield*, for appel-
lant.

Counsel for appellee says that this is not a case for
the use of section 1985; that there were eyewitnesses and
the facts about the occurrence are in evidence. But
this is only partly true. We have witnesses who tell
what the deceased did but nobody undertakes to say

what the men in charge of the train did. Counsel seems to consider that if the deceased was guilty of negligence there could be no recovery, whatever may have been the conduct of the men on the locomotive. But this is not a sound view of the case. Certainly these appellants are in no worse condition than they would have been in if they had proved by eyewitnesses that the deceased was standing in the middle of the track and had been standing there for some minutes when the train arrived. It would be the duty of the railroad company to explain what it did with respect to this occurrence. There has been no explanation here from the railroad company, no attempt whatever to exonerate itself from blame.

Proof of the injury by a running train creates the presumption of liability. The burden is on the defendant then to exonerate itself and this cannot be done by simply calling attention to what the deceased did. His negligence may be a defense or it may not be. Whether it is or not a defense is owing to the degree of guilt on the part of the company's agents and servants. If they were willful or wanton or reckless his contributory negligence is not a defense. The company cannot exonerate itself without showing that its servants were guilty of no wanton or capricious or willful acts. When the locomotive was almost ready to strike the man there were two short blasts blown. This shows that they saw him before they struck him. Whether they saw him before they blew the signal is not made to appear

The court will note that this is not a case where one suddenly dashes onto the track in front of a rapidly moving train. This is no case of that kind. Here we have a man moving slowly in plain view of the man on the engine. He was in plain view for some seventeen or twenty feet. In fact he must have been twenty-five feet or more from the place where he was struck when

his horse was first seen by the men on the train. Usually when a horse is moving along with a vehicle there is a human being in the vehicle. When they saw this horse advancing the men on the train should have known that there was possibly a man in the wagon. When they saw the old man sitting up in his wagon approaching the track it was very plain that he was in a position of peril and they should have known from his movements that he was not aware of his perilous position. When they saw him or his horse the men on the train should at once have begun to give signals and to try to check the speed of the train. If they had done this the old man's life would have been saved. As far as this record shows they did absolutely nothing, but relied altogether, as counsel do here, upon the contributory negligence of the old man in the wagon.

We respectfully submit that they have not relieved themselves of the burden imposed by the statute, and that it is a perfectly plain case for the application of that statute. If the men on the train were keeping a lookout, as they should have been, they saw him by the time he should have seen the train. In fact they saw his horse before the old man got from behind the stave timber. The men on the train had a much better opportunity to learn of his presence than he had to learn of the approaching train.

When counsel for appellee concedes that the old man was rightfully on the track and that this road had been used for so long a time as to imply a permission on the part of the railroad company to use it and that he was a licensee, we submit that there can be no question as to whether the issue should have been submitted to the jury, because this would mean that the men on the train should have been on the lookout; they should have been expecting that there would be persons on the track at this crossing. In fact in this concession of counsel we are safe in assuming that the men in charge of the

locomotive were actually on the lookout at this particular time and saw the old man's horse as it passed from behind the stave timber and saw the old man in his wagon slowly moving upon the track into a position of imminent peril.

*C. L. Sivley* and *Mayes & Longstreet,* for appellee.

There is nothing novel or interesting in this case. It presents no new question, either of fact or law. The deceased was driving a loaded wagon along a private road near the town of Koscuisko. He approached a private crossing at a place where the road for about six hundred feet was clear and straight. His view would have been entirely unobstructed except for the fact that on one side of the road there was a pile of cross-ties which would, if he had looked, have obstructed his view until he got within twenty feet of the track.

So it was that driving slowly in this wagon in the day time he approached this private crossing, drove up on it and was struck by the passenger train and killed.

The occurrence was witnessed by several persons who appeared upon the stand and gave their testimony, so that the statute has no application under the well settled rule.

It appears that the deceased drove up on this crossing without stopping to look and without looking. There was a whistling post about one thousand feet up the track at which the train whistled two long blasts. The whistle was heard by parties further away from the train than the deceased was.

One of the plaintiff's own witnesses testified explicitly and clearly to hearing this whistle when he was at or near the depot in Koscuisko, which was a good deal further away than this private crossing.

One of the plaintiff's own witnesses also testified that the deceased drove up on this crossing without even turning his head to look, that he had his head, and appar-

ently his gaze, fixed directly ahead of him as he drove up on the crossing and undertook to pass over.

The witnesses testified expressly and repeatedly that he did not turn his head to one side.

It appears from the above that if the deceased had listened he could have heard the whistle at the whistling post. He seems not to have heard it. At all events he paid no attention to it.

It is also clear that even after driving past the crossties, there was a place of about twenty feet in the road approaching the railroad where if he had looked he could have seen the approaching train and he could have stopped, or attempted to stop, his slow moving wagon which had only one horse to it. He made no such effort.

In this case, there is no proof of any negligence on the part of the railroad. The proof rather tends to show that if the engineer had been looking out for this man, as it seems he was looking out, he could not have seen the man because of the cross-ties he was concealed behind, until he got very near to the track.

But negligence or not on the part of the railroad company, it was the cleanest sort of case of contributory negligence on the part of the deceased, and for that reason the case should be affirmed.

In addition to the foregoing, the court will observe that in this record on the motion of the plaintiff below, the court himself and the jury went to the scene of the accident, and they had a full examination of the witnesses before the jury on the scene of the accident, with the situation of everything pointed out to the jury. This court cannot tell, therefore, and the record does not show, what the judge who gave this peremptory instruction, as well as the jury, saw and had pointed out to them.

The court will observe that this peremptory instruction was given by the court below on the close of the

plaintiff's testimony. Every word of the evidence in this record is plaintiff's own evidence, and they failed to make out a case.

McLAIN, J., delivered the opinion of the court.

The plaintiffs in the court below brought suit against the railroad company for the killing of their father, Mr. S. A. Fuller.

The facts in evidence are these: There is a private road intersecting the right of way and track of the railroad company at practically right angles. The railroad runs east and west; the dirt road, practically north and south at the point of the intersection. This dirt road had been in use for a long period of time, variously estimated at from ten to twenty years; had been used by the people in that section for this period of time; and was the road which Mr. S. A. Fuller habitually used, and had been using for many years in going to and from his farm and back to his home, his farm being on the south side of the railroad and his home on the north side. The railroad company kept in repair the approaches to its right of way and crossing over its tracks of this dirt road. For a distance of five hundred and ten feet west of where the dirt road crosses the railroad. the track of the defendant is straight, and for an additional distance of one hundred and fifty feet west the track is almost straight, having a slight curve, and the evidence is that the parties in charge of an approaching train from the west can easily see and discover, for a distance of six hundred and sixty feet west of the crossing, a person approaching the crossing when he gets within seventeen feet south of the crossing. South of the crossing, on the dirt road and seventeen feet three inches from the southern rail of the railroad track, was a pile of cross-ties placed there by the defendant on its right of way; these cross-ties being some six or seven feet in height. A little further south of this pile of

cross-ties the dirt road, leading to the railroad, sinks to some few feet below the surrounding surface of the ground. The effect of the pile of cross-ties is that a party approaching the railroad track from the south must pass beyond the pile of cross-ties in order to see an approaching train from the west, and the evidence is that those in charge of an approaching train for a distance of six hundred and sixty feet west of the crossing can easily see and discover a person approaching the crossing from the south after he had passed from behind the pile of cross-ties, which was seventeen feet three inches south of the southern rail of the track. Mr. Fuller, on the evening of December 2, 1909, between 5:30 and 6 o'clock p. m., approached and drove upon and undertook to cross the railroad track. He was seated in a one-horse wagon, and the wagon was being drawn by one horse. The evidence is that he was driving slowly; that he neither stopped, looked, nor listened for any approaching train before he got upon the crossing; that he never turned his head either to the right or to the left, but, upon the other hand, was facing the direction in which he was going, almost north. The train which killed Mr. Fuller was about thirty minutes late. It was a passenger train consisting of two passenger coaches, a baggage, and express car and an engine and tender, and was running at a high rate of speed—at a speed greater than it was in the habit of running. At a distance of nine hundred feet from this crossing was the whistling board for Kosciusko. The crossing at which the injury occurred was just out side of the corporate limits of the city of Kosciusko. When the train reached this whistling board, it gave the signal for the station, which was a long blast of the whistle. No other signal or warning whatever was given until just before the collision between the engine and the wagon in which Mr. Fuller was, when two short blasts of the whistle were given, and immediately thereafter

the wagon in which Mr. Fuller was driving was struck and the wagon demolished, the pieces scattered for a long distance up the track, and Mr. Fuller was hurled some feet and instantly killed. At the time of the collision the horse had passed over the crossing, and the wagon, that portion of it wherein Mr. Fuller was seated, was in the center of the track. The uncontradicted evidence is that by the proper application of the air brakes and the sanding of the track this train could have been stopped within a distance of two hundred feet. The train was running at the time of the collision from thirty-five to .forty miles an hour. There was no evidence at all that those in charge of the train made any effort whatever either to stop or check the train. The record is absolutely silent as to what those in charge of the train saw or did. Mr. Fuller was an old man, had passed his three score years and ten; and from the evidence it is clear that he was unconscious of his danger, being probably absorbed in other matters. At the close of plaintiff's evidence, the defendant made a motion to exclude from the jury all of the evidence which was sustained, and thereupon a peremptory instruction was given to the jury to find for the defendant, and the jury so found. From this an appeal is prosecuted to this court, and the exclusion of the evidence from the jury and the granting of the peremptory instruction are the errors assigned.

There are two counts in the declaration: First, the gravamen of the first count is that Mr. S. A. Fuller, at the hour of about 5:20 o'clock p. m., was riding across said railroad and over said crossing in a certain wagon drawn by one horse, and while on said track at said crossing and in plain view of the engineer and fireman of said train of defendant, the said railroad being at this point and for a distance of about two thousand feet almost straight from whence said train was coming. The said defendant then and there, by its servants, will-

fully, wantonly, negligently, and in utter disregard of
the rights of plaintiff's father, drove and ran its engine
and train willfully, wantonly, and negligently, in this:
That, while it was the duty of said engineer of said train
to keep a lookout for persons on said track or those
crossing said track at said crossing, yet while said engi-
neer saw said S. A. Fuller in his attempt to cross the
track at said crossing in his said one-horse wagon, or
could have seen him by the exercise of reasonable dili-
gence and prudence, and knew or could have known the
imminent danger he was in and peril to which he was
exposed, willfully, wantonly, and negligently failed to
sound the whistle or ring the bell so as to warn him of
his impending danger, and wantonly and negligently
failed to apply the emergency brakes which could have
reasonably and safely been done, and which, if done,
would have lessened the speed of said train, and plain-
tiff could have crossed said track in all safety; and fur-
ther, having willfully, wantonly, and negligently disre-
garded its duty caused the injury.   The second count
charges practically the same as in the first count, and,
in addition thereto, that the said S. A. Fuller was a
licensee, and that the engineer in charge of the train
negligently failed to sound his whistle at the whistling
post which was about nine hundred feet west of the
crossing, and, further, that the engineer willfully, wan-
tonly, and negligently failed, after passing said whist-
ling post, to sound the whistle or to ring the bell or to
warn said Fuller, who was then on the track at said cross-
ing, of his imminent danger after being in full view of
him, or where he could have seen him with the exercise
of reasonable care.   The defendant pleaded, first, the
general issue; and, second, contributory negligence of
the deceased, to which the plaintiff replied by tender-
ing issue.

Let us say, as we swing around the circle, that the
plea of contributory negligence is bad for the reason

that it simply alleges that: "The alleged injuries complained of in plaintiff's declaration and each count thereof, if any, were the direct and proximate result or cause of deceased, S. A. Fuller's, own contributory negligence, without any fault whatever on the part of the defendant." The plea is bad because it does not set up the facts which constitute the contributory negligence. However, as no point was made on this plea in the court below, we discuss the case as if the plea were properly drawn.

Evidently the action of the court below was predicated because of the contributory negligence of the injured party, Mr. S. A. Fuller. It may be conceded, and, in fact, we think, that the deceased was guilty of negligence. The appellant practically admits this, but takes the position that, by virtue of section 1985 of the Code of 1906, which says that "in all actions against railroad companies for damages done to persons or property, proof of injury inflicted by the running of the locomotive or cars of such company shall be prima facie evidence of the want of reasonable skill and care on the part of the servants of the company in reference to such injury," it may be said that Fuller was not a trespasser, but a licensee; and, without adverting to the proposition of any difference as to the degree of care required as to avoid injury upon a trespasser or licensee, we will for the present discuss the question as if the same degree of care is required towards Mr. Fuller as if he were a trespasser.

The rule is settled beyond controversy or doubt, first, that all that is required of the railroad company as against a trespasser is the abstention from wanton or willful injury, or that conduct which is characterized as gross negligence; second, although the injured party may be guilty of contributory negligence, yet this is no defense if the injury were willfully, wantonly, or recklessly done or the party inflicting the injury was guilty of such conduct as to characterize it as gross; and, third, that the

contributory negligence of the party injured will not defeat the action if it is shown that the defendant might by the exercise of reasonable care and prudence have avoided the consequence of the injured party's negligence.   This last•principle is known as the doctrine of the "last clear chance."   The origin of this distrine is found in the celebrated case of *Davies v. Mann*, 10 Mees & W. 545. The plaintiff in that case fettered the front feet of his donkey, and turned him into the public highway to graze.   The defendant's wagon, coming down a slight descent at a "smartish" pace, ran against the donkey, and knocked it down, the wheels of the wagon passing over it, and the donkey was killed. In that case Lord Abinger, C. B., says: "The defendant has not denied that the ass was lawfully in the highway, and therefore we must assume it to have been lawfully there. But, even were it otherwise, it would have made no difference, for, as the defendant might by proper care have avoided injuring the animal and did not, he is liable for the consequences of his negligence, though the animal might have been improperly there."   While Park, B., says: "Although the ass might have been wrongfully there, still the defendant was bound to go along the road at such a pace as would be likely to prevent mischief.   Were this not so, a man might justify the driving over goods left on the public highway or even a man lying asleep there, or probably running against the carriage going on the wrong side of the road." It is impossible to follow this case through its numerous citations in nearly every jurisdiction subject to Anglo-American jurisprudence. For the present it will be sufficient to say that the principle therein announced has met with practically almost universal favor. It has been severely criticized by some text-writers. The groans, ineffably and mournfully sad, of Davies' dying donkey, have resounded around the earth.   The last lingering gaze from the soft, mild eyes of this docile

animal, like the last parting sunbeams of the softest
day in spring, has appealed to and touched the hearts
of men. There has girdled the globe a band of sympathy
for Davies' immortal "critter." Its ghost, like Ban-
quo's ghost, will not down at the behest of the people
who are charged with inflicting injuries, nor can its
groanings be silenced by the rantings and excoriations
of carping critics.] The law as enunciated in that case
has come to stay. [The principle has been clearly and
accurately stated in 2 Quarterly Law Review, p. 207, as
follows: "The party who last has a clear opportunity
of avoiding the accident, notwithstanding the negligence
of his opponent, is considered solely responsible for it."
*Pickett* v. *Railroad,* 117 N. C. 616, 23 S. E. 264, 30 L. R.
A. 257, 53 Am. St. Rep. 611; *Thompson* v. *Railroad,* 16
Utah, 281, 52 Pac. 92, 40 L. R. A. 172, 67 Am. St. Rep.
621.]

An analytical examination of the adjudged cases upon
this subject will demonstrate the correctness of the
above analysis, and, in addition, establish the soundness
and technical accuracy announced in *Davies* v. *Mann, su-
pra.* This case has been criticised most severely and
assailed from its four corners, not only by reputable
text-writers and by courts of high authority, but these
courts have utterly and entirely failed to appreciate
the base upon which the principle is bottomed, and in
repudiating the principle do so upon the idea that
*Davies* v. *Mann* establishes the much-abused compara-
tive negligence doctrine, a doctrine repudiated by this
court, but established in this state by Laws 1910, ch. 135,
p. 125. (But this statute has no reference to the instant
case because passed subsequent to the injuries com-
plained of.) In order for the injured party's negli-
gence to bar recovery, all of the authorities hold that
it must be the proximate cause; otherwise, it is not
contributory. Now, when it is fully understood that the
negligence of the injured party must be the proximate

cause in order to bar the remedy (and, as said above, all authorities everywhere, ancient and modern, so affirm), the principle announced in *Davies* v. *Mann,* must, from necessity, be the correct and true rule. If the proximate and immediate cause of the injury—the *causa causans*—is the controlling and determining factor in ascertaining whether the injured party has the right to recover or whether the injuring party is not liable, then it must follow, as night the day, that the party who has the last opportunity to avoid the injury is the one upon whom the blame shall fall. To express the idea differently: If the injured party's negligence be remote, and not proximate, he can recover against the party who is guilty of negligence proximately contributing or causing the injury. The North Carolina courts have perhaps more satisfactorily and more clearly elucidated this question than have any opinions that have come under the writer's eye. In *Smith* v. *N. & S. R. R. Co.,* 114 N. C. 728, 19 S. E. 863, 923, 25 L. R. A. 287, it is said that the rule in *Davies* v. *Mann* simply furnishes a means for ascertaining whether the plaintiff's negligence is a remote or proximate cause of the injury; that, before the introduction of this rule, any negligence on the part of the plaintiff, which in any degree contributes to the injury, was judicially treated as the proximate cause, and constituted contributory negligence which barred recovery. The same is clearly stated in *Nashua Iron & Steel Co.* v. *W. & N. R. R. Co.,* 62 N. H. 159, 163, *et seq.* The antecedent negligence of the injured party, having been thus relegated to the position of a condition or remote cause of the accident, it cannot be regarded as contributory, since it is well established that negligence, in order to be contributory, must be at least one of the proximate causes. / The New Hampshire court, *supra,* uses this language: "Mann (referring to *Davies* v. *Mann*) would be no more liable for unlawfully shooting the fettered ass which Davies

has carelessly left on the public highway than he is for running over it, which by ordinary care he could avoid. One's negligence in permitting the ox to stray and in leaving the ass fettered in the street, although without it the injury would not happen, is no more ·the cause, in a legal sense, of the negligence than of ·the willful wrong. In each case alike, as in that of the broken leg, it merely affords the wrongdoer an opportunity to do the mischief," referring to *Bartlett* v. *Boston Gaslight Co.,* 117 Mass. 533, 19 Am. Rep. 42, and 12 Q. B. 439. This court again says on the same page: ''The question of contributory negligence is not involved. The wrong, if any, is the negligent injuring of ·property exposed to danger. The only question is whether the defendant could have prevented it by ordinary care. If he could not, he is without fault, and not liable. If he could, his negligence is in law the sole cause of the injury''—referring to quite a number of authorities. This case is luminating upon this question, and so, also, are the following authorities: Patterson's Ry. Acc. Law, section 58, and cases cited in note 1, p. 54; Elliott on Railroads, section 109cq, and cases cited in notes; 29 Cyc. p. 531, and cases cited in notes. As has been clearly stated in the note to *Bogan* v. *C. C. R. R. Co.,* reported in 55 L. R. A. 419; ''Since, therefore, the function of the doctrine is merely to strip from the negligence of the plaintiff or deceased the attribute expressed by the word 'contributory,' it follows that there is no opportunity or occasion for its application, unless and until it has been independently determined that there has been some breach of duty on the defendant's part intervening be-·tween the antecedent negligence of the plaintiff, or deceased, to the accident. If there was no such breach of duty, there could be no recovery, even if the doctrine of contributory negligence were to be repudiated altogether. Comparatively few even of the cases in which there has been an opportunity or occasion to apply the doc-

trine have recognized and discussed it as a separate and distinct doctrine under the name of 'last chance' doctrine.'"

Our conclusion is that the predicate upon which the principle in *Davies* v. *Mann* and the cases following that authority is based is that the defendant's liability is enforced because his negligence is the proximate cause of the injury. If, therefore, we be correct in this deduction, it must necessarily follow that our statute (section 1985 of the Code of 1906) is applicable and applies in cases where there is evidence of what may be termed the plaintiff's contributory negligence, as well in cases where there is no evidence of plaintiff's negligence. Since the statute makes the proof of injury presumptive evidence of defendant's negligence, why should it not apply when the issue is whether the plaintiff's or the defendant's negligence was the proximate cause of the injury? Is not plaintiff entitled to the benefit of the presumption in the one instance as in the other? If, however, we have failed to extract out of *Davies* v. *Mann* and that numerous line of authorities which have followed that memorable and remarkable opinion (memorable for its converts and remarkable for its lucidity, force and justice) the true predicate upon which it is based, it nevertheless follows that the peremptory instruction should not have been given because of the interpretation placed upon this statute (section 1985) by this court in numerous decisions. It will be noted later on in this opinion that there has been some oscillation of the judicial pendulum upon this question caused by this court attempting to adjust this statute to the ever-varying facts of particular cases as they arise, in order to enforce what this court supposed to be the purpose of the legislature. The purpose of the legislature was to in all cases make the proof of any injury caused by the running of the cars *prima facie* evidence of liability, regardless of the character of negligence requisite to

fasten liability upon the railroad company. This stat-
ute is first found in the Code of 1871, and was brought
forward in the same phraseology until 1906, when a new
class of persons was added, to whom was given the
right to invoke the wise and beneficent rule of evidence
introduced thereby. Prior to 1906 the rule as construed
by this court was not applicable to either employees or
passengers, but, strange to say, trespassers had the right
to invoke it, and in so doing were shielded by the stat-
ute; and in such cases liability of the railroad company
could not be etablished except where the act of the com-
pany or its employees was willful, reckless, or such as
to come under the characterization of gross. *Phillips'
case,* 64 Miss. 693, 2 South. 537; *Christian's case,* 71
Miss. 237, 15 South. 71; *Landrum's case,* 89 Miss. 399,
42 South. 675. In *Phillips' case, supra,* there were nu-
merous eyewitnesses to the injury, and yet the court
heild (Phillips was a trespasser, and the company owed
him no duty except to abstain from willful, wanton in-
jury) that he could invoke this statute, "though a cloud
of witnesses were present and testified to the injury."
The same was held in *Railroad* v. *Murry,* 91 Miss. 550,
44 South. 785. The last utterance upon this subject is
found in the recent case of *Hollinshed* v. *Y. & M. V. R.
R. Co.* (decided May, 1911) 55 South. 40, wherein the
court uses this language: "The statute applies regard-
less of whether the facts attending the injury are in evi-
dence or not." In *V. & M. R. R. Co.* v. *Phillips,* 64 Miss.
693, 2 South. 537, the court said: "The statute was en-
acted to meet cases where the manner of injury inflicted
is not known to others than the employees of the rail-
road company, but it is equally applicable where a cloud
of witnesses see the injury. It is not needed there it is
true, but it is not error to invoke it, for the law affects
the railroad company with liability *prima facie* in every
case of injury inflicted by the running of its locomotives
or cars. If the evidence showing the injury inflicted

rebuts the presumption, well, but, if it does not, the presumption created by law from the fact of the injury in this mode is to stand."

Presumptions in all cases must yield to facts, yet they fail, not because of the law, but because of the facts, and completely destroy the presumption; and hence when the statute, which is the law, gives this presumption, the courts have no right to make or charge a different rule. In so doing the court is substituting judge-made law for statutory law. Of course, when all the facts relating to the injury are in evidence, the court has a right to draw a conclusion based upon the facts, and in proper cases to give a peremptory instruction as these facts may justify.

The track was as straight as a string for a distance of five hundred and ten feet west of the crossing where Mr. Fuller was killed, and for an additional distance of one hundred and fifty feet the evidence shows the engineer could have seen a person crossing, or attempting to cross, the track, after he had passed from behind the pile of ties, seventeen feet to the south of the track; and the evidence is uncontradicted that the train was a light train consisting of two passenger coaches and a baggage and express car, and that this identical train, running at the rate of speed shown by the evidence, could have been stopped within two thousand feet. The whistle was sounded, two short blasts, just about the time of the collision. There was no evidence that those in charge of the train did or did not see Mr. Fuller. There is no evidence that any effort was made to stop or even check the train. There is nothing in the evidence to exculpate the defendant, except simply the presumption that those in charge of the train were not negligent (this would be the law in all cases except for the statute); but the statute, like a scimiter, cold, gleaming, and glistening in the light of expediency and of a great public policy, descends, cuts away this presumption, and says that the proof of in-

jury by the running of the cars is *prima facie* evidence
of liability. As has been held by this court in *Railroad
Co.* v. *Brooks,* 85 Miss. 269, 38 South. 40 (and one of
the questions there presented was whether the plaintiff
was guilty of contributory negligence, it being contended
that the facts of the case showed beyond dispute that
Brooks, the person injured, was guilty of such reckless-
ness as to preclude recovery by him), the court says:
"There is yet another principle of law well settled in
this state, which requires the submission of the case to
the jury. It was shown beyond peradventure that the
injury was inflicted by the running of the train. This
is *prima facie* proof of negligence, authorizing a recov-
ery by the plaintiff. To overcome this statutory pre-
sumption, it devolved upon the appellant to exculpate
itself by establishing to the satisfaction of the jury such
circumstances or excuse as would relieve it from liabil-
ity. But this statutory presumption cannot be overcome
by conjecture. The circumstance of the accident must
be clearly shown and the facts so proven must exonerate
the company from blame. If the facts be not proven
and the attendant circumstances remain doubtful, the
company is not relieved from liability, and the presump-
tion controls." To the same effect are the following au-
thorities: *Railroad* v. *Landrum,* 89 Miss. 399, 42 South.
675; *Combs* v. *M. & O. R. R. Co.,* 92 Miss. 532, 46 South.
168; *M. J. & K. C. R. R. Co.* v. *Hicks,* 91 Miss. 273, 46
South. 360, 124 Am. St. Rep. 679; *Southern Ry. Co.* v.
*Murray,* 91 Miss. 546, 44 South. 785; *Easley* v. *A. G. S.
R. R. Co.,* 96 Miss. 396, 50 South. 491. We note espe-
cially the *Hicks case, supra,.* In this case the court, con-
struing the statute, says: "The statute should be in-
terpreted precisely as if it were written thus: 'Proof
of injury inflicted by the running of locomotives or cars
of such company, shall be *prima facie* evidence of *lia-
bility* on the part of the company.'" The Hicks case
was a suit by an employee, and the argument was made

that the statute should not apply unless the evidence showed that the negligence was not the negligence of a fellow servant. We emphasize the proposition that this court in numerous cases has interpreted this statute so that *prima facie* evidence of *liability* is placed upon the railroad company by the proof of the injury. This construction has met with the approval of the legislature as it has not changed the statute, although it has had many opportunities so to do. The statute, which was born of necessity in order to establish the truth by placing the burden upon those who know, or who are supposed to know, the facts, should not be restricted by ingrafting upon it exceptions which destroy its usefulness; but, upon the other hand, should be rigidly enforced in all cases where any of the material facts are not supplied by the evidence, either direct or circumstantial. In truth, it was designed to meet just such an emergency. The purpose of the legislature is manifest; in fact, it may be said that this is as clear as "the brook that brings down the greetings of the mountains to the meadows, and sings a serenade all the way to the faces that watch themselves in its brightness."

We have thus seen that the statute is applicable in every conceivable case, even in cases where the party injured was a trespasser, and in such case, in order to fix the liability upon the railroad company, it is necessary that the defendant should be guilty of willful, reckless, or wanton conduct. This court in *Drake* v. *Railroad Co.,* 79 Miss. 105, 29 South. 788, approves the statement laid down in 13 Am. & Eng. Ency. of Law, 504, to wit: "For the purpose of rebutting the presumption, the evidence must be as broad as the presumption itself, and must satisfactorily rebut every negligent act or commission which might, under the circumstances of the case, reasonably or naturally have caused the fire." In this case the court further says: "The presumption of negligence from the escape of fire, however, cannot be

rebutted by merely showing that the machinery and appliances were of proper character and were at the time in good condition, without further showing that due care was employed to avoid such injuries; to accomplish which it should be shown, not only that the engine was in charge of competent and skillful servants, but also at the particular time and under the circumstances in question it was carefully managed and controlled." The fact that the question of contributory negligence was not presented in some of the cases above cited does not and cannot affect the question under consideration, for the plain and simple reason that the statute is intended to cover every conceivable case of injury which is the result of the running of the cars. To say that the statute does not apply because the injured party without excuse placed himself in a perilous position is to assume conclusively that the negligence of the party injured was the approximate cause of the injury, forgetting entirely the principle that the railway company may be liable under certain circumstances, even though the party injured was guilty of contributory negligence. In this connection we refer to *Railroad* v. *Hawkins*, 82 Miss. 209, 34 South. 323, which was a suit for the killing of a dog. This court, speaking through Calhoon, J., says: "If the engineer was on the lookout, as he says he was, in coming around a curve debauching into a cut, he must have seen the men and dogs. The jury manifestly thought that he did see them, or should have seen them by proper lookout in entering so dangerous a piece of road. One toot of his whistle would in all probability have prevented the damage. From the evidence the jury must have thought that he did see, and in that case the carelessness was so gross as to be tantamount to design." See, also, *Staggs* v. *Railroad*, 77 Miss. 507, 27 South. 597; *Harrison* v. *Railroad*, 93 Miss. 40, 46 South. 408; *I. C. Co.* v. *Tolson*, 139 U. S. 551, 11 Sup. Ct. 653, 35 L. Ed. 270.

So far as the point involved in the instant case is concerned. *Ensley R. R. Co.* v. *Chewning*, 93 Ala. 31, 9 South. 461, is directly in point. The defense in that case was that the plaintiff was guilty of contributory negligence. The court says on this subject: "The court instructed the jury that, 'if the plaintiff himself were negligent or at an improper place when he was struck, yet if the engineer saw his peril in time to stop the train and could have stopped it before the plaintiff was struck and failed to do so, and plaintiff did not know of his danger, then the defendant is liable and the jury should so find.' We have repeatedly held that, when persons in charge of a train discover the perilous position of one on the track though a trespasser, it becomes their duty to use reasonable care to prevent the injury, and the failure to do so is reckless or wanton negligence. *Railroad* v. *Womack*, 84 Ala. 149, 4 South. 618; *Frazer* v. *Railroad*, 81 Ala. 185, 1 South. 85, 60 Am. Rep. 145. This is the proposition of the charge, but defendant insists that there is no evidence tending to show reckless, wanton, or wilful negligence. The insistence is rested on the ground that, 'if the engineer be believed, he did everything in his power to save him, and that his evidence is uncontradicted; on the other hand, if his testimony be disregarded, then there is no evidence tending to show that plaintiff was ever discovered, or that the engineer did not make every effort in his power to prevent the accident. In either event, that the charge was abstract.' Positive, direct evidence as to the time when plaintiff was first seen, and as to the skill and diligence used thereafter to avoid injury, is not indispensable. These facts may be proved by circumstances, and are inferences to be drawn by the jury in applying common observation and experience, to whom the question was submitted." To the same effect, see *Southern Ry. Co.* v. *Shelton*, 136 Ala. 191, 34 South. 201, and *L. & N. R. R. Co.* v. *Trammell*, 93

Ala. 359, 9 South. 870. The facts in the instant case show that for a distance of six hundred and sixty feet west of the crossing where Mr. Fuller was run over and injured the track was perfectly straight; that there were no obstructions; that there was nothing to prevent those in charge of the train from seeing the perilous position of the plaintiff, and it may be that, if the engineer and fireman were on the lookout, they saw, or by the exercise of reasonable care and diligence might have seen, the perilous position of the plaintiff. No alarm was given. Nothing was done to warn deceased of the approaching train. He evidently was unconscious of its approach.

The only warning that was given him was too late to be of any benefit whatever, as the train was upon him at the time the two short blasts of the whistle were given. "Warning in all such cases" (and Mr. Fuller under the circumstances did not forfeit his right to be warned simply because he went upon the railroad track in front of an approaching train), as was said by the supreme court of the United States in *C. I. Co.* v. *Stead,* 95 U. S. 161, 24 L. Ed. 403, "must be reasonable and timely, but what is reasonable and timely warning may depend on many circumstances. It cannot be such if the speed of the train be so great as to render it unavailing. The explosion of a cannon may be said to be warning of the coming shot, but the velocity of the former generally outstrips the latter." Even if the engineer had not made an effort to stop or check his train, but had contented himself with giving the alarm at the point when he did see, or could have seen by the exercise of reasonable care on his part, the catastrophe in all probability would have been averted.

It must be observed that this is not the case of a pedestrian who approaches or who is on the track. In such cases the engineer has the right ordinarily to act upon the assumption that the party will get out of

danger. Mr. Fuller was in a wagon, and the engineer could have seen that he was going to cross the track, and could only with difficulty extricate himself from his perilous position. Everything shown by the evidence may be true, and *non constat* those in charge of the train may have seen and realized the perilous position of Mr. Fuller in time to have prevented injuring him by the exercise of reasonable care. On this point the evidence is silent, and consequently all the facts and circumstances relating to the injury are not in evidence.

We have discussed this question from the standpoint that Mr. Fuller, who was a licensee, was entitled to no greater rights than if he had been a trespasser. We do not mean to hold that Mr. Fuller under the circumstances, being upon a private road that had been used by the community for a long period of time with full knowledge of the railroad company, was not entitled to demand the exercise of more care and caution than the law demands shall be exercised towards trespassers. This question is pretermitted entirely from the opinion. It may possibly arise later on, when the question will be met and decided.

*Reversed and remanded.*