Robinson, et al. *v.* Sims

No. 40081 March 26, 1956 86 So. 2d 318

*Holloman & Threadgill,* Columbus, for appellant, Zack Robinson.

*T. J. Tubb,* West Point, for appellant, Southern Bell Telephone & Telegraph Company.

*H. T. Carter* and *H. K. Van Every,* Columbus, for appellee.

McGehee, C. J.

The appellee, Orlen S. Sims, the 28 year old son and only child of Mrs. Iva J. Sims, who was a widow 52 years of age at the time of her death, sued the appellants, Zack Robinson, Southern Bell Telephone and Telegraph Company and John E. Reed, servant and employee of the said Telephone and Telegraph Company, for damages on account of the death of his said mother, who was killed at approximately 4:15 P. M. on October 11, 1954, as the result of being struck by the automobile of the defendant Zack Robinson who was trying to pass on the wrong side of the pickup truck of the Telephone and Telegraph Company driven by defendant John E. Reed on the highway while he was acting in the course of his employment.

The case was submitted to the jury as against all three of the defendants, and with the result that the jury returned the following verdict: "We, the jury, find for the plaintiff against both of the defendants, and fix the damages at $15,000.00." The plaintiff had obtained an instruction which read as follows: "The court instructs the jury that if you find for the plaintiff in this case, the form of your verdict may be: 'We, the jury, find for the plaintiff against both of the defendants, and fix the damages at $————.' And in writing your verdict you will not write it on this sheet of paper, but write your entire verdict on a separate sheet of paper." No request was made of the trial judge to have the jury retire to the jury room to correct the verdict so as to specify the names of the two defendants against whom they intended to render the verdict. The judgment for $15,000.00 was entered on the verdict against the defendants Zack Robinson and the Southern Bell Telephone and Telegraph Company, jointly and severally.

The defendants Zack Robinson and the defendant Southern Bell Telephone and Telegraph Company filed separate motions for a new trial, assigning as error, among several other grounds, that the verdict is so ambiguous, confusing and indefinite that it is not susceptible of interpretation as to which two defendants are intended since there were three defendants and the verdict is against "both", clearly indicating an intent on the part of the jury to find against only two of the said three defendants. Both motions were overruled.

The defendants Zack Robinson and John E. Reed were both present during the trial; they were each introduced by the plaintiff as adverse witnesses; and were cross-examined by the plaintiff's attorney as adverse *parties* to the suit under Section 1710, Code of 1942.

The proof disclosed on behalf of John E. Reed and his employer the Telephone and Telegraph Company that the defendant Reed had been doing some work for

the Telephone and Telegraph Company at the Columbus Air Base, and that at the time the accident occurred he was en route from there to the City of Columbus to perform another assignment of work; that he was traveling in a southeasterly direction toward Columbus when he first saw Mrs. Iva J. Sims crossing the paved highway and walking in a southwesterly direction toward her home located on the west side of the highway; that she was then about 200 yards ahead of him and he was driving his employer's truck at about 35 miles per hour; that when he got within about 100 yards of her she had reached the center of the paved highway, and then began walking hurriedly and almost in a trot in the diagonal direction toward the driveway of her home; that thereupon he turned his truck slightly to the left of the center of the highway so as to be certain to avoid striking her with the truck; that in doing so he released the accelerator and "touched" the brake sufficiently to cause his rear red light to go on, and then held out his left hand downward as a slow or stop signal; and that after passing Mrs. Sims, who was then at or near the west edge of the pavement, he turned back toward the right side of the highway, before she was struck by the automobile of the defendant Zack Robinson, going in the same direction, and who, according to the undisputed proof, had accelerated the speed of his car from 40 to 45 miles per hour with the intention at first of passing the pickup truck on the left, and then decided to try to pass it on the right. The defendant Reed did not sound his horn as a warning to Mrs. Sims, but Section 8202, par. (d), Code of 1942, only requires a motorist to give warning to a pedestrian "by sounding the horn *when necessary* * * *."

By instruction No. 2 given on behalf of the plaintiff the jury was charged, in an enumeration of the duties imposed by law upon the driver of this pickup truck, that "it was the further duty of the driver of the

pickup truck owned by the defendant Southern Bell Telephone and Telegraph Company, Inc., to sound his horn to give notice of his presence on the highway." If, as testified to by the driver of this truck (and which testimony is undisputed), the pedestrian knew that the truck was approaching from behind her, as indicated by the fact that she was walking hurriedly and almost in a trot, then it was unnecessary that the driver sound his horn, since she was in the middle of the 20-foot pavement when he was 100 yards away and she had only 10 feet to go to get to the edge of the pavement due west and had ample time when going diagonally across the highway to get to the west side thereof before the truck reached her, as she did. Just as it is unnecessary for a member of a train crew to ring the bell or blow the whistle of a train when a pedestrian or motorist knows it is approaching, it is likewise unnecessary for a motorist to blow his horn at a pedestrian who knows that the car is overtaking or meeting him on her on the highway. New Orleans & N. E. R. Co. v. Burge, 191 Miss. 303, 2 So. 2d 825. The purpose of the warning by the blowing of the horn is to give notice of the approach of the automobile.

The proof as disclosed by the testimony of the defendant Zack Robinson is that in driving his car he was following the pickup truck driven by Reed some 3 or 4 car lengths or approximately 72 feet when approaching the scene of the accident; that he was driving about 40 miles per hour when he accelerated his speed to about 45 miles per hour in an effort to pass the Reed truck ahead of him; that he intended to pass the pickup truck on the left, but that when he got within 8 or 10 feet of the truck it turned to the left so as to partially block the left side of the pavement, which was not marked by a center line, and that as he then undertook to turn back into the right lane Mrs. Sims came from in front of the pickup truck and that he unavoidably struck her while he was trying to pass the pickup truck on the right side

thereof; that the pickup truck in turning back into the right lane struck the left front fender of Robinson's car with the right rear wheel of the pickup truck driven by Reed; that Reed had turned the pickup truck suddenly to the left and then suddenly to the right, and that in turning it to the left he did not give a signal of any kind; that the defendant Robinson had not seen Mrs. Sims at that time, and tried to pass the pickup truck on the right to keep from colliding with it on the left side of the pavement, and on which side he had speeded up to pass it. But there were five passengers with Robinson in his car and only one of them was introduced as a witness in his behalf, and that witness, Campbell, testified on cross-examination, that while he did not hear the horn of the pickup truck blow he did see the driver give the slow or stop signal, as testified by the driver of the pickup truck. Moreover, it is undisputed that the defendant Robinson did not undertake to decrease his speed until he began to skid when he saw Mrs. Sims. The right front light of his car was damaged by the impact when he struck Mrs. Sims, and her body is shown to be in the edge of her driveway a few inches off the pavement and it was shown that the right wheels of the Robinson car went off the pavement on the west side thereof. One of her shoes was found about 90 feet to the north of where the Robinson car stopped, which was said to be 70 feet south of her driveway.

Although the defendant Reed testified that he did not know of the presence of the Robinson car behind him, and did not know that he had lost the hubcap off his right rear wheel until after the two vehicles had stopped, the jury may have reasonably believed from the proof of the fact that it was "shift-changing time" at the Air Base, the defendant Reed should have anticipated or known that there were several cars leaving the air Base at that hour, and that one or more of them would be overtaking him by the time he arrived near the scene

of this accident, since he was only traveling 35 miles per hour in his pickup truck. The jury may have further believed from a preponderance of the evidence that he should have slackened his speed sufficiently to be able to avoid overtaking Mrs. Sims in the highway without having to turn toward the left lane thereof. He saw her at a time when she was at least 200 yards ahead of him, and even though he saw that she had reached the center of the pavement in crossing the highway in front of him when he was about 100 yards behind her, and had good reason to believe that she knew of the approach of his pickup truck and that it was unnecessary for him to blow his horn, it was his duty to give the proper signal when he was turning to the left of the center of the highway to make sure that he would avoid striking her with the pickup truck, and there is a conflict in the evidence as to whether or not he did give the proper hand signal in addition to causing the red light on the rear of the truck to come on. Section 8181, Code of 1942, reads as follows: "Upon all roadways of sufficient width a vehicle shall be driven upon the right half of the roadway, except as follows:

"1. When overtaking and passing another vehicle proceeding in the same direction under the rules governing such movement;

"2. When the right half of a roadway is closed to traffic while under construction or repair;

"3. * * * ;or

"4. * * *." This statute is captioned, "drive on right side of roadway—Exceptions". Of course, this would not prevent a motorist turning to the left lane in an emergency, upon giving the proper and timely signal, to avoid striking a pedestrian.

The defendant Robinson testified that Reed did not give the proper hand signal whereas the defendant Reed and the witness Campbell, one of the five passengers in the Robinson car, and the only one who was in-

troduced as a witness, both testified that Reed did give the signal with his left hand downward as a slow or stop signal. It was a question for the jury as to whether or not the defendant Reed should have remained in the right lane going south and decreased his speed sufficiently to avoid the accident, instead of taking the chance of obstructing a part of the left half of the highway in front of the oncoming traffic from the rear. The jury may have believed that he should have remained in the right lane, and that this would have afforded the defendant Robinson an opportunity to pass him on the left without the accident having occurred.

We have concluded that neither of the three defendants were entitled to a directed verdict in their favor; that instruction No. 2 given the plaintiff was erroneous to the extent that it peremptorily informed the jury that it was the duty of the driver of the pickup truck "to sound his horn" under the facts and circumstances disclosed by the testimony; and that the argument to the jury by the plaintiff's counsel, the objections to which by the defendants were overruled, was so highly prejudicial as to warrant a reversal of the case as against both of the appellants, even if the verdict had been in proper form and instruction No. 2 had not been given for the plaintiff. The declaration did not seek to recover punitive damages and that issue was not submitted to the jury. The suit was merely for loss of companionship and anticipated contributions to the plaintiff of which he may have been deprived by the death of his mother. In that status of the case the question of in how many states the Telephone and Telegraph Company may have operated, and how large a verdict the jury should render to be one that the said defendant "will feel" as a big outfit, was calculated to serve no purpose except to obtain a verdict that the jury may not have otherwise rendered for loss of companionship and anticipated contributions under the particular facts of this case.

 Moreover, since it is undisputed that Mrs. Sims was killed instantly, it was improper to prove in detail how many bones were broken and how her broken neck would make a scraping noise in turning the head of the dead body. This testimony was admitted upon the theory that it tended to show by the force of the impact the speed at which the Robinson car was being driven at the time thereof. But there is no dispute in the evidence that he had speeded up his car from 40 to 45 miles per hour at the time of the impact.

For the reasons hereinbefore stated the judgment appealed from must be reversed and the cause remanded.

Reversed and remanded.

*Kyle, Arrington, Ethridge* and *Gillespie, JJ.,* concur.