**Vincent A. PALISI, Plaintiff,**

v.

**LOUISVILLE & NASHVILLE RAILROAD CO., Inc., Defendant.**

**Civ. A. No. 2676(S).**

United States District Court
S. D. Mississippi, S. D.
March 2, 1964.

Howard McDonnell, Arnaud O. Lopez, Biloxi, Miss., for plaintiff.

George Morse, Gulfport, Miss., W. Brevard Hand, Mobile, Ala., for defendant.

WILLIAM HAROLD COX, Chief Judge.

Phillip Palisi (age 16) was killed at a public crossing by the east bound Louisville & Nashville Railroad freight train, about 4:30 A.M., May 7, 1961. A jury awarded the plaintiff a verdict for twenty thousand dollars. This suit was brought under the Mississippi Wrongful Death Statute to recover from the railroad for the fatal injury on this occasion of the son of the plaintiff. This train was drawn by a diesel locomotive on this occasion and was operating at about twenty-five miles per hour as it crossed St. Peter's Street at Gate No. 6 on Keesler Air Force Base in Biloxi, Mississippi. The railroad requested a preemptory in-

struction under Rule 50 at the conclusion of the evidence, and action thereon was deferred by the Court to await the verdict of the jury; whereupon the defendant timely moved under that rule for a judgment notwithstanding the verdict, or in the alternative, for a new trial.

The facts in this case are without substantial dispute. Phillip Palisi was a house guest of Jeanne LeCourt (age 14). Both of them lived in a suburb of New Orleans. The LeCourts had a cottage at Waveland where the deceased was visiting. About 6:30 P.M., on May 6, these young people persuaded Roger Alverson, an airman stationed at Keesler Field and a friend of the deceased, to spend the evening with them at the LeCourt home. About 4:00 A.M., Roger became dissatisfied and requested that he be taken back to Keesler Field. The deceased and Jeanne LeCourt drove Roger in the LeCourt car to the air base with the decedent driving. When Roger got out of the car at Keesler, Jeanne LeCourt got in the driver's seat, and the decedent moved to the position beside her on the front seat. Thus the parties traveled through the base enroute home a few hundred yards in a southerly direction to a street which paralleled the railroad tracks, and which had a steel mesh fence constructed along the side thereof as the boundary of the air base at that point. The parties then drove easterly along that street about a city block to St. Peter's Street which crossed this railroad track at Gate No. 6 in a southerly direction. At the point of this intersection of this street with St. Peter's Street there was erected at Christmas time of 1959 a very small guard shack off the right-of-way for the protection of the air guard at this gate. This shack obscured the Mississippi stop sign on the east side of St. Peter's Street to some extent from view at one angle thereto when proceeding easterly and turning south at that point. This statutory sign was taller than the shack, and was probably twenty feet or more south thereof.

On this occasion under these circumstances this train (with its stationary head light burning, its wigwag light operating, with its bell ringing, and air horn blowing for this crossing) was approaching said crossing, while this automobile driven by Jeanne LeCourt, with some of the windows down, drove along this street parallel to said track just ahead of said train. This railroad crossing was well lighted by flood lights on the north and south side thereof. The crossing was slightly elevated on the northern approach thereto, and was slightly depressed on the south side.

Jeanne LeCourt turned south on St. Peter's Street at Gate No. 6, operating the automobile at about ten or twelve miles per hour. She did not stop at this crossing as required by state law. She said that she could not see the stop sign, and thus did not know of the existence of this railroad in that vicinity with which she was not very well acquainted, but she had driven over this crossing through Gate No. 6, five or six times within the past few days prior to this accident. As this automobile approached this railroad crossing, with the train coming east, an air police dressed in military uniform and wearing a white hat, and standing in the middle of St. Peter's Street, signaled Jeanne LeCourt to stop her car, but she pulled the automobile slightly to the east of the police, and passed him, and was immediately struck by the train. The air policeman raised his right open hand forward, and thus standing in the middle of St. Peter's Street, ordered this automobile to stop, but his signal order was ignored, and he was obliged to step aside (westerly) to avoid being hit by the automobile. Jeanne LeCourt saw the sign, but said she thought he was waving at her as a greeting, though he was a stranger.

The position and height of the statutory stop sign, and the size of the guard house did not obstruct the sign from view of the operator of this vehicle, except probably for the short interval of time when she was immediately north of this little six or eight foot shack, just before she turned her automobile south on St. Peter's Street. At all other times this

sign was in plain view for anybody to see. Although the radio on this car was operating in a low tone, the sounds and warnings emanating from this train at this time in the last darkness of the morning, were present for anyone with normal sensibilities to hear and see.

■■ A railroad is not an insurer of the absolute safety of a crossing under all circumstances and conditions. The presence of the air police in the center of this street where he did everything proper and necessary to have warned the driver of this car to stop, far more than compensated for the presence of the guard house on the premises which obscured the vision of the stop sign of the railroad for a moment to a motorist in the street and due north of said shack. One witness estimated the speed of this train at forty miles per hour, but his vantage point made that estimate somewhat of a reckless guess. The Mississippi Speed Statute (1942 Code § 7782), however, has no application to the speed of this diesel drawn train. Neither does the Mississippi Bell and Whistle Statute (1942 Code § 7777) have any application thereto. Stapleton v. Louisville & N. R. R. Co., (5 CA) 265 F.2d 738.

■ There was no substantial evidence in this case to contradict the undisputed evidence of the railroad that everything possible was done which could have been done after seeing that this automobile was not going to stop for this crossing, to stop this train to avoid the tragedy if possible. So that, there was no substantial evidence for a jury to ponder upon as to the Last Clear Chance Doctrine. Illinois Central R. Co. v. Underwood, (5 CA) 235 F.2d 868.

■ The sole negligence of the railroad relied upon by the plaintiff was as to its failure to *maintain* said statutory sign so as to warn motorists of the presence of said railroad tracks. The implication inherent in such defense is the supposition that if this statutory sign had not been thus obstructed from her vision for a fractional part of a second, that she would have seen it during such interval of time, although she did not see it during the vastly greater period of time when it was in full view. It taxes the credulity of any reasonable person in honest quest of the truth to believe such an incredible statement under the circumstances in this case, particularly when this motorist would not even be stopped by a command of the air police. This circumstance brings into play the principle announced in New Orleans & N. E. R. R. Co. v. Burge, 191 Miss. 303, 2 So.2d 825, where the Court said: "And an actor's negligent conduct is not a substantial factor in bringing about harm to another if it would have been sustained even if the actor had not been guilty of the particular negligence charged. 2 Restatement, Torts, § 432." The Court in that case further significantly said: "To say on the record in the present case that had the required signals been given the injury would not have occurred is to invoke a possibility or conjecture, and it is not within the legitimate province or power of a jury to convert a possibility into something more by the mere force of a verdict. Teche Lines, Inc., v. Bounds, 182 Miss. 638, 649, 179 So. 747." That is exactly what happened in this case, under the guise of fact-finding, this jury has pretended to see and find some nonexistent negligence on the part of this railroad by the impermissible use of mere surmises, and conjectures about this stop sign which are simply not supported by any substantial evidence in this record.

■■ All questions of negligence by statute in Mississippi are made jury questions. Even though this is a diversity case which must be tried as if this were another Mississippi Court, still, a Federal Court has the inherent power to pass upon the quantity and quality of proof necessary to make out a case for submission to a jury. Johnson v. Buckley, (5 CA) 317 F.2d 644.

■■ It is the carefully considered judgment of this Court, that the plaintiff's evidence of negligence of the railroad in this case is too tenuous to constitute such substantial evidence as to warrant submission of the case by the Court to a jury. The scintilla of evidence rule

**654**

is not in effect in the Federal Court, or in a Mississippi Court. The verdict of the jury is simply without substantial support in this record. The decedent undeniably met his death solely as a proximate result of the gross negligence of Jeanne LeCourt. Accordingly, the motion of the defendant for a judgment notwithstanding the verdict of the jury will be sustained, and the former verdict and consequent judgment will be vacated, and its motion for a new trial will be overruled.

An order accordingly may be presented for entry.