NEW ORLEANS & N. E. R. Co. v. BURGE.

(In Banc. June 14, 1941.)

[2 So. (2d) 825. No. 34546.]

304

Heidelberg & Roberts, of Hattiesburg, for appellant.

**E. F. Coleman**, of Purvis, for appellee.

Griffith, J., delivered the opinion of the court.

Appellee, driving a motor truck, ran into the side of a freight train at a public crossing, and was injured, although not seriously. He brought an action against the

railroad company charging that the locomotive whistle was not blown nor the bell run as the train approached the crossing.

The testimony to sustain the stated charge is not strong, but we will assume that it was sufficient. The great weight of the evidence points to the conclusion as the more reasonable that appellee struck the caboose at the rear end of the train after the crossing had been occupied by some thirty-five freight cars and a locomotive and tender, in all about one-fourth of a mile in length; and if this were true it would follow without further facts that appellee had no case. Gulf, M. & N. R. Co. v. Addkison, 189 Miss. 301, 194 So. 593. But we will lay aside also that question; and will determine the cause as if everything said by appellee were true, supplemented of course by those facts which are undisputed.

The accident occurred about nine o'clock on the night of February 16, 1940. It was raining slightly, some of the witnesses speaking of it as a drizzling rain. The cab of the truck was closed and the windshield wiper was in motion. The occurrence was in a remote section of the Town of Lumberton at Love's crossing and on a street extending eastwardly for about one thousand feet, before reaching the crossing. The railroad ran north and south, and the track in both directions from the crossing was straight for more than a quarter of a mile, and for this distance was open and easily visible at any point within seventy-five feet of the track when approaching the crossing from the west.

Appellee's story is that he entered upon this west to east street, and continued eastwardly thereon at the rate of twenty to twenty-five miles per hour and, without slowing down or looking or listening, ran into the locomotive or tender—he would not say which—and that he did not become aware of the presence of the train until he was within four to five feet of it. The train, as already mentioned, consisted of thirty-five cars and was about a quarter of a mile long. Its speed was about forty miles

per hour and its noise or roar was distinctly heard by one of appellee's witnesses who was more than a mile and a half away. Appellee was entirely familiar with the crossing and stated that he had been over it a thousand times. It is not questioned that the locomotive was equipped with the statutory electric headlight in full operation.

Crediting him with sanity, it borders upon the unbelievable that the accident should have occurred as appellee says it did; but it puts an intolerable strain on credulity that reasonable men should be asked to believe, in addition, that as a matter of reasonable likelihood the ringing of a bell on that locomotive would have substantially contributed to an effective awareness on appellee's part. It is a matter of common observation that the gleam of the statutory electric headlight produces, all along for a distance of not less than 150 to 200 feet, in a drizzling rain at night, a radiance of such a pronounced nature as to force itself with startling distinctness upon the sensibilities of any normal mind, unless that mind is at the time unresponsive to all that is around about. If the roar of a train which in the quiet of the night was of such intensity that it was heard a mile and a half away and the gleam of the large electric headlight in the drizzling rain athwart the immediate pathway of appellee were insufficient to make the slightest impression on his sensibilities until he was within five feet of the train, how can he propound the proposition, as more than a conjecture or possibility, that the ringing of a bell would have any earlier aroused him? Of such a state of facts could men of sound discretion, acting impartially, say with real reason otherwise than that it was highly probable that, if the locomotive bell had been rung, there still would have happened to appellee, so far as he was concerned, what did happen?

It is not enough in any case merely that the defendant was negligent. The failure to ring the bell or blow the whistle does not of itself impose liability. If it did, then

a man stone-deaf with nobody in sight of him could recover. The statute does not so attempt, even if it could constitutionally do so—however much upon a casual approach there may be a feeling to the contrary. In this, as in all cases, it is necessary to a cause of action on account of the negligence that the latter shall have been the proximate, or a contributing, cause of injury to another; and in order that it shall be a proximate or contributing cause it must have been a substantial factor in producing the injury. And an actor's negligent conduct is not a substantial factor in bringing about harm to another if it would have been sustained even if the actor had not been guilty of the particular negligence charged. 2 Restatement, Torts, sec. 432. The foregoing statement is particularly applicable in those cases where the actor's negligence consists in the failure to take certain precautions which are required by law for the protection of another's person or chattels, of which the requirement to ring the bell or blow the whistle at public crossings is an example. In such a case, if the same harm, both in character and extent, would have been sustained even had the actor taken the required precautions, his failure to do so is not even a perceptible factor in bringing it about and cannot be a substantial factor in producing it. 2 Restatement, Torts, p. 1162.

The foregoing are principles so well established that further elaboration or citation of authority are unnecessary. The problem becomes, then, one of the quantum of proof and the burden of proceeding therewith. And as in all other cases, possibilities and conjectures are excluded from the equation. It is not enough for the injured person, who has primarily the burden of the proof, to say that had the required precautions been taken by the opposite party, the injury might possibly have been avoided, or to propound a conjecture to the same effect. But when it has been established that the required precautions have not been taken and that there is more than a possibility that had they been taken the injury would

not have occurred, the negligent actor must thereupon lucidly show, or the record as a whole must show, that under all the disclosed circumstances of the case, the required precautions would, in all reasonable likelihood, have been unavailing, or that the injury would, in all reasonable likelihood, have been sustained even had the negligent act not been done; and while this showing is not required in the sense or to the extent of disclosing it beyond doubt, nevertheless it must be done with fair and reasonable clarity, to be gathered from all the facts and circumstances of the case. 2 Restatement, Torts, p. 1163. Or to put it otherwise, if the evidence discloses that it was highly probable that the injury would still have occurred had there been no negligence on the part of the defendant, the latter's negligence is not to be allowed as a proximate or a contributing cause. 2 Restatement, Torts, p. 1164.

To say on the record in the present case that had the required signals been given the injury would not have occurred is to invoke a possibility or conjecture, and it is not within the legitimate province or power of a jury to convert a possibility into something more by the mere force of a verdict. Teche Lines, Inc., v. Bounds, 182 Miss. 638, 649, 179 So. 747. To thus convert, what, on the facts, is no more than a possibility into something more would be to allow an arbitrary exercise of power by an agency employed in government, and in that connection due process must be remembered as a primary constitutional mandate. In view of what is disclosed by this record taking all that the plaintiff says as true together with the undisputed physical facts it is clear as a matter of all reasonable likelihood that appellee would not have heard the bells if two instead of one had been rung. The facts amount practically to a demonstration that he was both deaf and blind to everything except what he himself was doing, his sensibilities were in an evident state of unresponsiveness to all else; and thus the failure to ring the bell—and that was all that appellant was

required to do—disappears as a substantial factor in bringing about the injury; hence appellee cannot recover.

Reversed and judgment here for appellant.

DISSENTING OPINION.

**Alexander, J.**, delivered a dissenting opinion.

The majority opinion must rest upon the proposition that the negligence of the plaintiff was the sole cause of his injury. He was undoubtedly guilty of both actual and statutory negligence. Had he obeyed the requirement of the law to stop, look, and listen, undoubtedly the injury would not have occurred. Yet if the defendant failed to ring the bell, it, too, was guilty of negligence per se. The majority opinion assumes that it failed to ring its bell, and also that such failure not only was not, but could not have been, a contributing factor in the injury.

In stressing the requirement that verdicts must not be based upon mere conjecture, the Court has drawn upon conjecture to construct a basis for its reasoning. To intimate that since the plaintiff did not see he could not hear, tends to repeal physical laws: to infer the futility of making the statutory signals from the fact of failure to hear the roar of the oncoming train is contrary to our statutory law. When the legislature crystallized the mandate of common prudence into the requirement that travelers before effecting a crossing should stop, look, and listen, it, with perfect consistency, required that whenever the approach of a train gave the traveler reason to stop, it must also give him, by way of warning, something at which to look and something to which to listen. In the considered judgment of the Legislature, such warnings must take the form of lights and bells.

This Court by its opinion has in effect more than intimated that a railroad company may ignore the statutory mandate and conserve wear upon its bells by indulging the assumption that if one can't see the train he won't hear the bell, and if the greater noise of a moving train

includes and obscures the lesser tinkle of its bell, such bell is of use only when the train is still. Is it not conjecture to assume that plaintiff was not listening, and listening could not have heard a ringing bell? The noise of a bell is unique, distinctive, and characteristic. The Legislature was not content to leave to travelers the duty of identifying approaching trains by the rumble of their wheels. Nor is it so adequately established as a truism as to attract judicial notice, that one who does not see does not hear. Rather is there support for the truth that one may, by summoning his entire attention to the aid of one of his senses, suspend function of the others. One who looks or reads intently is apt to develop a disturbing insensibility to spoken inquiry, even as one who lends too attentive an ear may borrow responsiveness from vision and leave the listener staring with unseeing eye. Such, indeed, is the etymology and psychology of concentration.

The purpose of the required signals is to attract and arrest attention. It assumes both the possibility and probability of inattention. The majority opinion assumes the fact of inattention and the impossibility of overcoming it. It may be that plaintiff would not have heard the bell had it been rung. But it seems to draw more heavily upon conjecture to say that he would not than that he would.

The testimony is consistent with plaintiff's statement that his car struck the engine or tender of the train. He was following another car at a distance of about two hundred feet. Considering plaintiff's speed (about twenty-five miles per hour), and the length of the train (nearly a quarter of a mile), it is difficult to see how he could have struck the caboose of a train which reached the crossing after the preceding automobile had passed the crossing and interposed itself between such car and that of plaintiff.

It is quite true that although failure to ring the bell or blow the whistle was negligence per se, it is not neces-

sarily a proximately contributing cause of the injury to the plaintiff. The majority opinion correctly states that "it is not within the legitimate province or power of a jury to convert a possibility into something more by the mere force of a verdict." Yet the writer is inclined to doubt whether it is within the legitimate province of this Court to depreciate a reasonable probability into something less by mere judicial fiat.

To say that the failure to ring the bell "disappears" as a substantial factor in the case, is euphemistically to describe as a voluntary withdrawal in the face of overpowering reason a situation where in fact this circumstance is forcibly liquidated by alien assumptions which have been allowed to invade the discussion. It may be that a trial jury, completely aware of its rights and duties, would in this case agree with the views of the majority of this Court. However, the nature of their ultimate verdict is important only to the parties. Our concern is to defend their right to function in the field of proximate cause.