217 So.2d 274 (1968)
NEW ORLEANS AND NORTHEASTERN RAILROAD COMPANY and N.B. Slayton, Defendants/Appellants,
v.
J.V. WEARY, Plaintiff/Appellee.
No. 45090.
Supreme Court of Mississippi.
December 23, 1968.
Rehearing Denied January 20, 1969.
*275 M.M. Roberts, Hattiesburg, for appellants.
Holmes & Dukes, Hattiesburg, John B. Clark, Daniel, Coker, Horton & Bell, Jackson, for appellee.
PATTERSON, Justice:
This suit originated in the Circuit Court of Forrest County. J.V. Weary, appellee, sought to recover damages against appellants, New Orleans and Northeastern Railroad and N.B. Slayton, a railroad engineer, for injuries incurred in a car-train collision in Hattiesburg. The case was tried before a jury and from a verdict for the plaintiff in the amount of $50,000 the defendants appeal.
The declaration filed by Weary alleged that the defendants were negligent in (1) maintaining a dangerous crossing, (2) failing to maintain a warning device at such crossing, (3) negligent operation of a train, (4) operating a train at a dangerous rate of speed and not keeping a lookout for persons on public roadway, (5) failure to sound a whistle, blow a horn or ring a bell at least 300 yards from the crossing, (6) failure to keep a flagman at the crossing, (7) failure to comply with city ordinances relating to keeping crossing free from weeds and trash and keeping crossing well lighted, and (8) failure to comply with a city ordinance relating to keeping crossings in good condition, and that such negligence was the proximate cause of injury. The defendants by their answer denied any negligence on their part.
The evidence reflects that on January 3, 1966, at about 4:00 p.m., J.V. Weary left his work because of rain and at the direction of his employer drove a fellow employee *276 home. He was in his personal car and upon completion of this task was returning to his employer's place of business for further instructions when the accident happened. In returning, appellee was driving north on Eastside Avenue, parallel to the appellant's railroad track which lay some fifty to one hundred feet to the west. When he reached Scooba Street, he made a left-hand turn and moved west toward the railroad track at a speed of from fifteen to twenty miles per hour. Apparently unknown to the appellee a train was traveling in a northerly direction on the railroad at a speed of from forty-five to sixty miles per hour.
Testimony introduced by the defense showed that four men were riding in the locomotive of the train. The engineer was on the left side of the locomotive, which was the side opposite that from which Weary was approaching the crossing. His testimony was to the effect that he did not see Weary's automobile prior to the collision. The flagman, fireman, and the brakeman were on the right side of the locomotive and observed Weary as he approached the crossing. The brakeman stated that he thought Weary was going to stop, but both he and the other two men on the right side of the train testified that the plaintiff's car kept coming at a constant speed. The fireman warned the engineer to apply his emergency brakes when he realized that the oncoming car was not going to stop, which in his words was when "* * * we were right upon him * * *." The engine struck the car in which Weary was riding just as it crossed the tracks and pushed it some fifty to sixty feet beyond the point of initial impact. The train, which included seven cars, one caboose, and the engine, did not stop until well past the crossing.
According to testimony, there was no signal or warning device at this crossing other than a "Mississippi Law Stop" sign. Several of appellee's witnesses who were in the immediate vicinity, testified that the locomotive whistle was not blown nor was the bell rung to warn motorists of the approaching train. The engineer, flagman, fireman, and the brakeman all testified that the whistle was blown, the headlight was on, and the bell was ringing at least 1,000 feet before the train passed over the Scooba Street crossing The appellee, who received a brain injury as the result of the collision, testified that he could not remember whether he stopped before crossing the tracks, looked to see if a train was coming, or saw the train prior to the collision.
The record reflects that the western and southern visibility of motorists approaching Scooba Street crossing on Eastside Avenue was impaired by weeds growing along the tracks. The defense entered photographs taken a day or two after the accident depicting the condition of the crossing. These photographs tend to corroborate plaintiff's witnesses' testimony concerning the presence of such weeds.
Shortly after the accident appellee was treated by Dr. Frank E. Jones, a general practitioner, whose qualifications were admitted. He testified that as a result of the accident Weary was reduced to the mental age of a two- or three-year-old child. He further testified that appellee had a fifty percent permanent disability because of back injuries received in the accident. Weary was also treated by Dr. Azordegan who performed an operation on him for a ruptured disc. Dr. Azordegan testified that on January 24, 1967, appellee had a ten percent mental disability, but that his memory had gotten worse since that day. He attributed all of appellee's medical problems to the train collision though there is evidence that Weary had suffered previous injuries to his back which had required surgery.
Defendants moved for a directed verdict when the plaintiff rested and again at the end of all testimony. Their motions were overruled. The case was tried before a jury which returned a verdict of $50,000 for the plaintiff. The defendants then moved for a reduction in judgment or a new trial, but such motion was overruled.
*277 In their first assignment of error appellants maintain that the court should have granted their motion for a directed verdict or peremptory instruction. In support of this assignment they argue that the accident was caused by the failure of the appellee to stop, look and listen prior to crossing the railroad tracks. They relegated negligence on the railroad's behalf to a secondary position and concluded that the negligence of the appellee was the sole and proximate cause of the accident.
The appellee did in fact breach a statutory duty when he entered upon the railroad crossing without first stopping to make sure that it was clear. Mississippi Code 1942 Annotated section 7776 (1956), Driver of motor vehicle to stop before crossing railroad track, states, among other things, the following:
* * * [I]n the trial of all actions to recover personal injury or property damages, sustained by any driver of such motor driven vehicles for collision of said vehicle and train in which action it may appear that the said driver may have violated any of the provisions hereof, the question of whether or not the said violation was the sole or approximate cause of the accident and injury shall be for the jury to determine. The violation of this section shall not of itself defeat recovery, and the question of negligence or the violation aforesaid shall be left to the jury; and the comparative negligence statutes and prima facie statute of this state shall apply in these cases as in other cases of negligence. (Emphasis added.)
The appellants' contention that the plaintiff should be precluded from recovering because of his failure to comply with this statute is not persuasive. Although the statute does require motorists to stop prior to reaching a crossing, it also specifies that a failure to do so does not necessarily defeat recovery and in fact states that negligence on the part of the driver is a question for the jury.
Under Mississippi Code 1942 Annotated section 7777 (1956) the engineer of the train was required to cause "the bell to be rung or the whistle or horn to be blown at the distance of at least three hundred yards from the place where the railroad crosses over any public highway or municipal street * * *." Appellants introduced testimony that the bell was rung and the horn was blown. However, there was credible testimony to the contrary, thus creating an issue of fact to be resolved by a jury. Appellants cite, however, in support of their argument, several cases which hold generally that a motorist is precluded from recovery in a crossing accident when he fails to stop his automobile. An examination of these cases reveals that they differ factually from the present situation. These cases are distinguishable because they dealt with a factual circumstance wherein the motorist either saw the approaching train prior to the accident or the train was on the crossing, and therefore, the blowing of the horn or ringing of the bell could not alert the motorist to see that which he already observed or should have observed. We are faced here with the situation where the train was not on the crossing and therefore was not readily observable, nor was there any evidence that plaintiff saw the train prior to the collision.
It should be noted that where visual stimulation is present to warn a driver of a train's presence and the impending danger, and in response to such stimulus he does see it, the failure to blow a horn or ring a bell is of little significance. However, where there is no testimony that the driver of the automobile saw the train prior to the collision, the question of whether warning by sounding the bell or whistle was given and whether such would have alerted the motorist and would "probably" have prevented the accident is of prime importance.
In regard to this question the Court stated in New Orleans & Northeastern Railroad *278 Co. v. Ready, 238 Miss. 199, 203, 204, 118 So.2d 185, 187 (1960):
* * * Whether the bell on appellant's engine was ringing was in direct conflict, and it was the function of the jury to resolve this issue and determine whether appellant's employees failed to ring the bell and whether such failure was a proximate cause of appellee's injuries.
* * * * * *
We are of the opinion that the Court may not rightfully deny the jury the right to function in the area of proximate cause in a case like this. Section 7776, Code of 1942. * * *
Further, the Court stated in Archer v. Gulf, Mobile & Ohio Railroad Co., 186 So.2d 470, 473 (Miss. 1966) that:
* * * [T]he question of whether or not the bell or whistle on appellee's engine was sounded in compliance with the statutory requirements of section 7777 was squarely within the province of the jury to determine. It was likewise within the province of the jury to determine whether or not the appellee's failure to ring the bell or sound the whistle was a proximate cause of appellant's injuries. * * *
When a directed verdict or peremptory instruction is requested, "* * * the court must look solely to the testimony on behalf of the party against whom the directed verdict is requested and must take that testimony as absolutely true, along with all reasonable inferences which could be drawn therefrom, favorable to such party." Meaut v. Langlinais, 240 Miss. 242, 248, 126 So.2d 866, 867 (1961), and if, by the use of this standard, the evidence and inferences would support a verdict for that party, a directed verdict or peremptory instruction should not be given. In view of the conflicting testimony as to whether auditory warnings were made as required by statute, it is our opinion that this case was one in which the questions of negligence and proximate cause were for the jury. See New Orleans & Northeastern Railroad Co. v. Ready and Archer v. Gulf, Mobile & Ohio Railroad Co., supra. We are of the opinion that the lower court's refusal to direct a verdict or grant a peremptory instruction for appellants was not erroneous.
The second assignment of error concerns alleged mistakes made by the trial court in admitting incompetent evidence and permitting numerous improper questions to be propounded by the plaintiff's attorney, which in turn, forced the defense attorney to object thereto, the contention being that the admissions of the improper evidence and the propounding of improper questions when considered in total created a courtroom atmosphere prejudicial to the defendants. The following questions are complained of by the defendant's attorney. In questioning his client J.V. Weary about the accident, the plaintiff's attorney asked, "J.V., just try to tell what you remember." This was objected to as being too general. At another point, plaintiff was asked, "did you get well from that operation?", whereupon an objection was interposed that the question was leading, and again a statement posed in the form of a question was made as follows, "Well, smile and let the jury see your new teeth.", to which an objection was made. These objections were all overruled by the trial court.
The first question quoted above is general but when considered with prior testimony that this witness had suffered damage to his brain, leaving doubt as to his ability to comprehend, we cannot say that this question was improper. The second question, objected to as being leading, is of the type normally left to the discretion of the trial court, as in some instances leading questions are proper when propounded to a person of tender age or limited mentality. See McElroy's Mississippi Evidence § 157 (1955), and the cases cited therein. The statement, "Well, smile and let the jury see your new teeth," taken *279 out of context appears to be trivial and is not propounded in the form of a question as it should have been, however, the record reflects that the plaintiff lost numerous, if not all, of his teeth as a result of the accident and under the circumstances we are of the opinion that the exhibition of the teeth to the jury was not error.
Considering the above questions with others of a somewhat similar nature to which numerous objections were made did not in our opinion create an atmosphere prejudicial to the defendant. The manner of trial decorum, use of leading questions, etc. are matters largely left to the discretion of the trial judge, as he is present, has the opportunity, as well as the duty, to see that the course of the trial is conducted in conformity with traditional notions of fairness and impartiality to the litigants. See Summerville v. State, 207 Miss. 54, 41 So.2d 377 (1949); and Mississippi Utilities Co. v. Smith, 166 Miss. 105, 145 So. 896 (1933). Although some of the questions were not as articulate as perhaps they should have been, considering the record over-all we cannot say that there was an abuse of the trial court's discretion in permitting these questions to be propounded.
The appellants next contend that improper remarks made by the plaintiff's attorney in his final argument before the jury were prejudicial and the case should be reversed for this reason. During the course of the argument plaintiff's attorney referred to railroad crossings, stating that every politician who had run for office in the city of Hattiesburg had talked about the "bad crossings," that the jury knew about people getting killed at the Scooba Street crossing, and that the crossing was dangerous and everybody knew it, and the argument was made that J.V. Weary had the mind of a three-year-old; that his mind did not equal the mentality of his children, and that he would be like a little child looking for Santa Claus at Christmastime. At this time the court directed the jury to retire and declared his intention of granting a mistrial, whereupon the attorney for the defendants requested that this not be done, rather that the court admonish the jury not to consider these remarks. The court's comment on what transpired is as follows:
BY THE COURT: Let the record show that to the best of the knowledge of the Court, within two minutes of the final argument by Mr. Holmes for the Plaintiff in this case, he made a similar statement to the effect that every man running for office in the City had talked about what was going on at these bad crossings. At that time the Court ordered the jury to go into the jury room, and the jury went into the jury room, and the Judge stood up and said that he was considering declaring a mistrial in this case because of the statement; and at that juncture, Mr. Roberts, the Attorney for the railroad company, arose and said, "If it please your Honor, do not declare a mistrial, but let it go to the jury and advise the jury that they will not consider his remarks." That is my recollection as to what took place. I am not going to say that that is absolutely correct, but that is my recollection of what I said, and at that time the Court brought the jury back and put the jury in the jury box and Mr. Holmes finished his argument. All right.
We are of the opinion that this assignment is not well taken as the request by appellants' counsel that a mistrial not be granted waived any objection which they might have had to the improper argument of counsel. See Henry v. Collins, 253 Miss. 34, 158 So.2d 28, 176 So.2d 891 (1963); Lyle v. Johnson, 240 Miss. 154, 126 So.2d 266 (1961); and Brush v. Laurendine, 168 Miss. 7, 150 So. 818 (1933).
The next assignment of error relates to the granting of instructions for the appellee. The appellants contend certain of these instructions were general. One failed to state how tall the weeds were *280 along the track. Another instruction was granted which stated it was the duty of the defendant railroad company and its employees to use reasonable care and maintain a proper lookout, but this instruction did not state what constituted proper care or a proper lookout. Although these instructions are far from perfect and not as specific as they might be, they do not appear, in our opinion, to be so vague or indefinite as to mislead the jury as to the facts or the law. We conclude that whatever defect may have existed in a particular instruction was cured when all of the instructions are read together by the jury. See Peel v. Gulf Transport Co., 252 Miss. 797, 174 So.2d 377 (1965) and Kirkland v. Harrison, 221 Miss. 714, 74 So.2d 820 (1954). This Court will not reverse a case because an instruction is not happily phrased, or because it is not exactly technically correct, or so long as the instruction is not misleading. Substantial accuracy is all that is required in an instruction and unless the Court can clearly say that the jury might have been misled, it will not reverse. Nelms & Blum Co. v. Fink, 159 Miss. 372, 131 So. 817 (1930); City of Jackson v. Wright, 151 Miss. 829, 119 So. 315 (1928); and Meridian Sanatorium v. Scruggs, 121 Miss. 330, 83 So. 532 (1920).
Appellants' remaining assignment of error contends that the defendants' motion for a new trial should have been granted or a corrected judgment should have been entered because of an excessive verdict. The record reflects two competent physicians testified that appellee suffered severe mental and physical injuries of a permanent nature as the result of this accident. The appellee's former employers attested to the fact that prior to the accident he had been a capable worker and was earning from $1.50 to $2.00 per hour. A recent employer testified that since the accident the appellee has not been able to work because of his mental and physical condition resulting from the accident. The evidence discloses that the appellee was forty-five years of age, married, the father of six children, and had a life expectancy of 26.8 years at the time of the trial.
The rule in Mississippi on excessiveness of a verdict is well stated in Luther McGill, Inc. v. Clark, 244 Miss. 707, 721, 146 So.2d 338, 345 (1962):
* * * The fixing of the amount to be awarded as damages in a personal injury case is peculiarly within the province of the jury, and with its decision this Court cannot interfere unless it is so large as to manifest bias, prejudice and passion on the part of the jury, and, as frequently stated, to shock the conscience of the court. In view of the serious nature of the injuries complained of, as shown by the medical testimony offered on behalf of the appellee, we are unable to say that the amount of the verdict is so excessive as to manifest bias, prejudice and passion on the part of the jury.
See also Philco Distributors, Inc. v. Herron, 195 So.2d 473 (Miss. 1967); Gulf Hills Dude Ranch, Inc. v. Brinson, 191 So.2d 856 (Miss. 1966); Sears, Roebuck & Co. v. Burke, 208 Miss. 306, 44 So.2d 448 (1950); and J.C. Penney Co. v. Evans, 172 Miss. 900, 160 So. 779 (1935). Cf. Ill. Cent. R.R. v. Ragan, 252 Miss. 335, 173 So.2d 433 (1965). The verdict is large, particularly when it is considered in the light of the plaintiff's contributory negligence. However, in view of the controlling principles laid down by our case law and the evidence before us, we cannot say that the verdict was so excessive as to evidence passion, prejudice or bias on the part of the jury. Therefore, we are of the opinion that appellants' motion for a new trial and correction of the judgment were properly denied by the court below.
The judgment of the trial court is affirmed.
Affirmed.
GILLESPIE, P.J., and RODGERS, BRADY, INZER and ROBERTSON, JJ., concur.