Robert J. NEWMAN, Jr., Plaintiff,

v.

**MISSOURI PACIFIC RAILROAD COMPANY et al., Defendants.**

Civ. A. No. 72W–52(R).

United States District Court,
S. D. Mississippi, W. D.

Oct. 19, 1976.

J. Walter Brown, Jr., Natchez, Miss., for plaintiff.

Daniel J. O'Beirne, Natchez, Miss., for defendants.

## SUPPLEMENTAL FINDINGS OF FACT AND CONCLUSIONS OF LAW

DAN M. RUSSELL, Jr., Chief Judge.

On September 2, 1976, the Fifth Circuit Court of Appeals, while retaining jurisdiction of this case on appeal, remanded it to the District Court for additional findings of fact and conclusions of law with respect to four issues. 538 F.2d 96.

(1) What constitutes an unusual and dangerous crossing?

Plaintiff relied upon the statutory presumption of negligence, Section 13–1–119, Mississippi Code of 1972. To overcome such statutory presumption, the defendant railroad must exculpate itself by establishing to the satisfaction of the trier of facts such facts and circumstances as would relieve it from liability. *Dickerson v. Illinois Central Railroad Company,* 244 Miss. 733, 145 So.2d 913. Plaintiff contends that the defendant failed in its burden, and this Court agreed in its opinion issued December 14, 1974.

Turning to what constitutes an unusual and dangerous crossing, *Gulf, M. & N. R. Co. v. Holifield,* 152 Miss. 674, 120 So. 750, was the forerunner of Mississippi cases which hold that a railroad company has the right to occupy the crossing for its legitimate purposes, and while so occupying the crossing it was not required to maintain lights on its cars, or to station a man with a lantern at the crossing to give warning that the crossing was obstructed, *unless the conditions and circumstances were such that the train crew knew, or in the exercise of reasonable care and caution should have known,* that a person driving upon the street at a reasonable rate of speed in an automobile properly equipped with lights, and carefully operated, could not see or *might not be able to see* the railroad cars in time to avoid a collision therewith, or, as stated by the court in quoting from an Alabama case: "The employees of the defendant, in the absence of some peculiar environment, are justified in believing that travelers in automobiles properly lighted and driving at reasonable speed will observe the cars upon the crossing in time to avoid coming into collision with them." In *Spilman v. Gulf & S. I. R. Co.,* 173 Miss. 725, 163 So. 445, the Mississippi Supreme Court said: ". . ., we find that every court which has considered the question, including this court in *Gulf, M. & N. R. Co. v. Holifield,* 152 Miss. 674, 120 So. 750, has held that the occupancy of the entire crossing by a railroad train [is] sufficient warning within itself of the presence of the cars on the crossing, and this includes flat cars."

*Boyd v. Illinois Central R. Co.,* 211 Miss. 409, 52 So.2d 21, established an exception to the "occupied crossing" rule of Holifield, Spilman, and like cases, which held that the presence of the railway car upon the crossing is all the notice which a traveler needs, by adding ". . . it must be at once apparent that such an expression has no application where the conditions and circumstances are such that reasonable care requires some further warning." *Illinois Central Railroad Company v. Williams,* 242 Miss. 586, 135 So.2d 831, was such a case. In *Williams,* the court held that to fall within the exception stated in Holifield there must be "some peculiar environment which renders the crossing unusually dangerous." The court further stated, as held in *Boyd,* where the evidence as to unusual danger and failure to take proper precautions is in dispute, questions of the railroad's negligence and contributory negligence of plaintiff are issues for decision by the trial court. In *Williams,* although there was the usual, unlighted "Mississippi Law Stop" sign at the approach to the crossing, the court held that, where the tracks were slightly raised at the point that they crossed the street at an angle so that an approaching automobile had to be fairly close before its light beams would strike a crossing boxcar, and, where brightly lighted structures in the background caused an approaching driver some confusion, such conditions constituted an "unusually dangerous crossing" within the occupied crossing doctrine, requiring special precautions by the railroad. The court found that the weight of the evidence reflected that the crossing was unusually dangerous, that the railroad had ample notice of this fact, but wilfully failed to take adequate precautions to notify the traveling public, and further found that the negligence of the railroad and Williams were concurring causes, each being a proximate cause of the accident, and the comparative negligence statute (Section 11–7–15, Mississippi Code of 1972) did not bar recovery, but only served to diminish the recovery by Williams' next of kin.

In its original opinion in this case, this Court did not treat this case as one involv-

ing an "occupied crossing." After reciting the physical evidence at the crossing, the Court found that the dark colored engine, switching at night over a spur crossing, without sufficient illumination to reveal its presence, presented an unusual danger. It was undisputed that the engine did not occupy the crossing prior to plaintiff's approach, but was backing out of the International Paper Company yard. The Court found that until the engine reached the crossing it was not visible to plaintiff who was so near the crossing at the time the engine entered it as to be unable to stop. The Court made this finding on the basis of the testimony of the engineer, the plaintiff, photographs and an engineering plat of the premises. The plaintiff testified repeatedly that he saw no "Stop on Red Signal" sign, although he had seen one when crossing this track earlier in the day from the opposite direction, saw no activated red flashing light, heard no whistle or horn blowing, and saw the engine entering the crossing too late to be able to stop. While the engineer said the flashing light was activated, and that he had turned on the bell and the whistle, he admitted that there were no lights on the side of the engine, the only ground lights on the engine being near the front of the engine, pointed back in the direction of the paper yard. He admitted at times the electric eye which activated the flashing light had failed. The Court noted that photographs taken shortly after the accident (they were taken by defendant's claims agent), did not reveal that a "Stop on Red Signal" sign, supposedly below the Mississippi Stop Law sign, was evident from the south approach to the crossing and surmised that, in the absence of such a sign, the flashing light, even if activated, may not have indicated to plaintiff a railroad crossing, but was more akin to that of a traffic light at the intersection of two roads. This engineer also admitted that two floodlights on the apron of the International Paper Company yard, used to check the loads of wood trucks entering the premises, would have been between the backing engine and plaintiff's car at some point in their collision course. Although the Court did not mention such in its earlier opinion, it was aware through the testimony of the engineer and the fireman that they considered this a dangerous crossing because cars often did not stop at this crossing despite the stop sign and the flashing light when it was activated by an electric eye, that both men, while operating defendant's engine and cars, experienced "near misses", and they had both advised their superiors of these circumstances.

(2) By what standard should the court determine the issue of negligence vel non on the part of the railroad company (a) at an ordinary crossing, (b) at an unusual and dangerous crossing?

■ Suffice it to say that, although this engine was equipped with the statutorily required lights (nothing in the record shows whether the light on the front and rear of the engine was the wig-wag type or not), and was equipped with a bell and horn, the sounding of which was disputed, and the required Mississippi stop sign was properly located on either side of the crossing, all of which may have been sufficient to fulfill defendant's obligation of ordinary care to the traveling public during the day time, and thus be within the limits of an ordinary crossing, the Court found still finds that the engine, as it was about to enter the crossing in the dark of the night, was not sufficiently illuminated of itself, or the crossing area was not sufficiently illuminated, for plaintiff to see the engine as it entered the crossing in time to warn him of his peril, and, under the circumstances of this case, the crossing presented plaintiff with an unusual and dangerous condition which was known, or should have been known to the defendant, requiring a greater degree of care on the part of the defendant in the form of an additional warning, such as a flagman at the crossing or illumination over the crossing. See *Boyd v. Illinois Central R. Co.*, supra. In this connection, in the deposition of O. S. Koski, a security guard for International Paper Company, who stated that he periodically checked the flashing light, and who was making his rounds at the time of the accident about three-quar-

ters of a mile away from the crossing at the time of the accident, said he heard the engine's bell ringing and the horn blowing before the accident, and then heard sustained ringing and blowing in distress after the accident. Yet he did not recall hearing the siren of the ambulance which came to pick up plaintiff. Although he said the flashing light was working before and after the accident, at the time of the accident, he could not see the light as a building was between him and the crossing. The Court did not refer to his deposition in its opinion, but does so now as there was apparently no disinterested witness who actually saw the light flashing, or heard the bell and horn at the time the engine exited the paper yard and entered the crossing.

(3) What effect has Mississippi's adoption of comparative negligence had on the doctrines of subsequent negligence/last clear chance/ "better chance" and proximate cause?

The Mississippi Supreme Court dealt with the doctrine of "last clear chance" in *Fuller v. Illinois Central R. Co.,* 100 Miss. 705, 56 So. 783, decided in 1911, wherein that court in reciting the duty of a defendant railroad company toward one injured by the running of its train, held that the contributory negligence of the party injured will not defeat the action if it is shown that the defendant might by the exercise of reasonable care and prudence have avoided the consequence of the injured party's negligence, citing from authorities thusly: "The party who last has a clear opportunity of avoiding the accident, not withstanding the negligence of his opponent, is considered solely responsible for it." The implication of other language in this decision is that under the doctrine of last clear chance, the plaintiff's negligence, if any, could not be a proximate contributing cause, but was remote, inasmuch as the party who has the last opportunity to avoid the injury is the one upon whom the blame shall fall. In an early North Carolina case, which the Mississippi court relied on, contributory negligence was then a complete bar, as it is now in a number of states. In *Fuller,* decided one

year after Mississippi's adoption of its comparative negligence statute, now Section 11–7–15, Mississippi Code of 1972, the court apparently did not consider this statute's effect on the doctrine of "last clear chance", as it treated contributory negligence as a complete bar, and having no effect in the application of the last clear chance doctrine, the Court concluding that, in such a case, contributory negligence was remote or not causative of the injury. In addition to *Fuller,* plaintiff has cited a number of Mississippi decisions and federal decisions applying Mississippi law that reflect that the doctrine of last clear chance is still viable in Mississippi. See *Illinois Central Railroad Company v. Pigott* (1965), 254 Miss. 429, 181 So.2d 144, (facts invoking the doctrine held to be a jury question); *New Orleans and North R. Co. v. Dixie Highway Express* (1957), 230 Miss. 92, 92 So.2d 455 (case remanded for the jury to determine question of contributory negligence, if any, and, whether under comparative negligence statute, damages should be diminished, and further for the jury, on the issue of damages, the question whether the engineer's negligence was an intervening, sole cause of the collision, and whether the last clear chance doctrine applied thereto); *Palisi v. L. & N. R. Co.* (D.C.1964), 226 F.Supp. 651 (evidence insufficient to take to jury under last clear chance doctrine); *Underwood v. ICRR* (5 Cir. 1956), 235 F.2d 868 (under Mississippi law, there must, under last clear chance doctrine, be a clear chance after the peril is actually discovered and actually appreciated); and *Illinois Cent. R. Co. v. Lee* (5 Cir. 1954), 212 F.2d 496 (for the jury to determine whether railroad employees had used due diligence after they knew, or should have known by exercise of reasonable diligence, that grain truck was in a position of peril and did all they reasonably could to avoid hitting it). In only one of the above cases, involving the last clear chance doctrine, *Dixie Highway Express, supra,* was the issue of comparative negligence also involved, yet the Mississippi Supreme Court indicated in its remand that both issues were for the jury. Also of note is a footnote, No. 13, to Judge Cameron's decision in

492

*Underwood,* supra, wherein he said: ". . . The doctrine of discovered peril or last clear chance, so important in states where contributory negligence is a complete defense, loses most of its meaning and importance in Mississippi". This Court has found no Mississippi case, concluded on its merits, wherein the contributory negligence of a plaintiff has minimized damages in the face of a finding that the defendant had the opportunity, or last clear chance, to avoid injury. Nor did this Court in its opinion here find that the engine crew had the last clear chance to avoid the accident. It did say, in view of the train crew's testimony that they were going at five miles an hour and, once aware of plaintiff's peril, stopped the engine within fifteen feet, had a "better chance" to avoid the collision in comparison to the fact that the crossing was clear until plaintiff was so close as to be unable to stop. The Court did not mean by the use of this phrase to preclude the application of plaintiff's contributory negligence in failing to stop at the stop sign, which was visible to him or should have been.

The Court acknowledges that counsel for both parties complied with the Appellate Court's mandate to assist this Court in responding to the questions posed by the Appellate Court.

This Court re-affirms its original opinion that under the circumstances in which this accident occurred, the crossing was dangerous in that there was insufficient illumination for the plaintiff to see the rear of the engine as it backed out into the crossing and that plaintiff was equally negligent in having failed to observe the "Mississippi Law Stop" sign. On this basis, plaintiff is entitled to recover the sum of $31,447.79.

An order to this effect may be submitted. The Clerk of this Court is directed to return the record in this case, including the depositions of Robert L. Wheeler, Jr. and K. K. Kennerly to be filed and made a part of this record, to the Fifth Circuit Court of Appeals, together with a duplicate original of this opinion and the order to be rendered thereon.