Robert J. NEWMAN, Jr., Plaintiff-Appellee Cross-Appellant,

v.

MISSOURI PACIFIC RAILROAD COMPANY and J. I. Brown, Jr., Defendants-Appellants Cross-Appellees.

No. 75–1231.

United States Court of Appeals,
Fifth Circuit.

Jan. 13, 1977.

Daniel J. O'Beirne, Jim C. Blough, Natchez, Miss., for defendants-appellants cross-appellees.

W. F. Riley, Claude Pintard, Jr., J. Walter Brown, Jr., Natchez, Miss., for plaintiff-appellee cross-appellant.

Before RIVES, GOLDBERG and CLARK, Circuit Judges.

RIVES, Circuit Judge:

At about 2:30 a.m. on November 6, 1971, plaintiff Robert J. Newman, Jr., was driving an automobile north along a public highway near Natchez, Mississippi, approaching a railroad spur crossing. At the same time a railroad engine was backing down the spur tracks in an easterly direction, approaching the crossing from the west. After the Newman car was allegedly too near to stop short of the tracks, the engine emerged into the crossing. The car and the engine collided, with resultant personal injuries and property damage to the plaintiff. It was undisputed that Newman had been traveling at a reasonable rate of speed, between 30 and 40 miles per hour, but that he did not stop in obedience to a stop sign properly posted at the crossing, violating Mississippi law then in effect.[1]

At trial defendant Missouri Pacific Railroad Company claimed that as its engine approached the crossing the train crew repeatedly sounded the engine's horn and rang its bell and that a red flashing light, suspended over the highway, was activated in time to warn plaintiff. Plaintiff testified that he saw and heard no such warnings. The evidence showed that the fireman of the train had observed the headlights of plaintiff's car moving along the road from a point approximately 390 feet from the crossing. When the car was approximately 100 feet from the crossing, the fireman signaled for an emergency stop of the train. At this point, however, the engine, which according to testimony requires

approximately 15 feet to be brought to a halt, could not be stopped until after it had partially entered the crossing, where it collided with plaintiff's automobile. There were no side lights burning on the engine, although a strip of illuminated paint ran down its side. A plat introduced at trial shows that the tracks cross the road at an angle so that neither front nor back lights on the ends of an engine traveling east would be facing toward a driver proceeding north on the highway.

Sitting without a jury, the court below found that the "dark colored engine, switching at night over a spur crossing, without sufficient illumination to reveal its presence, presented an unusual danger," and that this situation gave rise to an extraordinary duty to warn plaintiff of the approach of the engine.[2] Having found such a duty to warn, the district judge concluded that the railroad had not fulfilled its duty. He did not make a finding as to whether the red flashing light was in operation prior to the accident, stating that since this light more nearly resembled an ordinary traffic light than "the kind [of light] normally associated with a railroad crossing," it did not constitute sufficient warning even if activated. Having previously found that plaintiff did not hear the bell or horn "until too late," the district court found that the ringing of the bell and the sounding of the horn did not cure the insufficiency of the warning.

In view of the fact that the fireman observed plaintiff's car lights at some dis-

---

1. Miss.Code Ann. § 77–9–249 (1972) in effect at the time of the accident provided in part:

   "It shall be unlawful for any person to drive or propel any automobile or automobile truck or other motor driven vehicle upon any railroad track at a public highway or municipal street intersecting such railroad at grade crossing without first stopping at a distance of not less than ten feet nor more than fifty feet from the nearest track and looking for train. . . . In the trial of all actions to recover personal injury or property damages, sustained by any driver of such motor driven vehicles for collision of said vehicle and train in which action it may appear that the said driver may have violated any of the provisions hereof, the question of whether or not

   the said violation was the sole or approximate cause of the accident and injury shall be for the jury to determine. The violation of this section shall not of itself defeat recovery, and the question of negligence or the violation aforesaid shall be left to the jury, and the comparative negligence statutes and prima facie statute of this state shall apply in these cases as in other cases of negligence."

2. The district judge reasoned by analogy to the duty to warn imposed upon a railroad when its train is already occupying a crossing, if conditions and circumstances render the crossing dangerous and unusual. *Boyd v. Illinois Central,* 211 Miss. 409, 52 So.2d 21 (1951); *Illinois Central v. Williams,* 242 Miss. 586, 135 So.2d 831 (Miss.1961).

tance from the crossing and the fact that the warning given was insufficient under the circumstance, together with the fact that the engine could be stopped within 15 feet, the district court found that the fireman was negligent in failing to initiate an emergency stop sooner. Although the court found that in view of this situation, the train crew had the "better chance" to avoid this accident, the district judge has stated in a Supplemental Opinion on remand, 421 F.Supp. 488, that he did not find that the engine crew had the last clear chance to avoid the accident. Also on Supplemental Opinion, the district judge noted that his conclusion that the crossing was unusual and dangerous was supported by testimony that earlier "near misses" at this intersection had been reported to the railroad.

After finding liability and damages against the railroad company and against J. I. Brown, Jr., the engineer of the locomotive, the court below reduced the amount of damages by one-half because of what it found to be the equal contributory negligence of the plaintiff, based on the fact that his automobile windows were closed and bedewed and his car radio was on, making it difficult for him to see or hear warnings, and on his failure to stop before crossing the tracks.

Both defendants have appealed from the finding of liability against them. Plaintiff has appealed from the reduction of his recovery, claiming (1) that he was not negligent and (2) that the railroad crew had the last clear chance to avoid the accident.

### PART I. Negligence of Defendants

Defendant railroad argues that the judgment below is based upon the last clear chance doctrine, which defendant maintains is not applicable to the facts of the present case. While this issue is discussed in Part III, below, we conclude, after consideration of the district court's Supplemental Opinion on remand, that negligence was found against the railroad regardless of the last clear chance doctrine, and that this finding is not clearly erroneous.

We cannot say that it was clearly erroneous for the district court to conclude that this crossing was an unusual and dangerous one, requiring special warning. Although, as the district court noted, this was not an "occupied crossing" case, inasmuch as the railroad engine was not in the crossing at the time of the alleged negligence, the court was justified in drawing upon "occupied crossing" cases for guidance. In the seminal case of *Gulf, M. & N. R. Co. v. Holifield*, 152 Miss. 674, 120 So. 750, 751 (1929), the Mississippi Supreme Court set forth the rule that a railroad company is not obligated to warn of the presence of railroad cars in a crossing *unless* such warning is called for by peculiar conditions or circumstances bearing upon the inability of motorists to see the danger presented:

"We are unable to give our assent to this contention of the appellee. The appellant had the right to occupy the crossing for its legitimate business purposes, and while so occupying the crossing it was not required to maintain lights on its cars, or to station a man with a lantern at the crossing to give warning that it was obstructed by the cars, unless the conditions and circumstances were such that the employes knew, or in the exercise of reasonable care and caution should have known, that a person driving upon the street at a reasonable rate of speed in an automobile properly equipped with lights, and carefully operated, could not see or might not be able to see the cars in time to avoid a collision therewith, or, in other words, as said by the Supreme Court of Alabama in the case of *St. Louis-San Francisco Railway Co. v. Guthrie*, 216 Ala. 613, 114 So. 215, 56 A.L.R. 1110: 'The employes of the defendant, in the absence of some peculiar environment, are justified in believing that travelers in automobiles properly lighted and driving at reasonable speed will observe the cars upon the crossing in time to avoid coming into collision with them.' "

See also *Boyd v. Illinois Central R. Co., supra,* and *Illinois Central R. Co. v. Williams, supra.* This Court concludes that Mississippi law, which requires adequate ad-

ditional warnings in the "occupied crossing" situation, would require them at least equally in the instant case, which involves difficulty in apprehending the *approach* of a train. We also conclude that the evidence as to the angle of the engine's approach and its lack of lateral illumination is sufficient to support the district court's finding that the train was unusually and dangerously difficult to see.

The case of *Illinois Central R. Co. v. Smith*, 243 Miss. 766, 140 So.2d 856 (1962), relied upon by defendant railroad, is in many ways similar to the instant case, but it is clearly distinguishable on the present point by the obvious fact that the accident in *Smith* occurred in broad daylight, and by the testimony therein that plaintiff would have had a clear view of the approaching train, had he looked:

> "The testimony of a civil engineer introduced by the plaintiffs, and one introduced by the defendants, was to the effect that the decedent had an unobstructed view of the crossing as he approached it from the east for a distance of at least 382 feet, *and that he also had an unobstructed view of the approaching train of from 350 to 400 feet in a southeasterly direction, from which the train was approaching.* Then, too, there were 44 photographs and two plats introduced which supported their testimony. One of these two civil engineers testified that when 216 feet east of the crossing—the direction from which the decedent was approaching—the visibility of the motorist was good for one-fourth of a mile toward the south and the civil engineer who testified for the defendant said that from 350 feet east of the crossing, the decedent had an unobstructed view of the train for a distance of 420 to 425 feet to the south."

140 So.2d at 857–858 (emphasis supplied). Defendant has argued at length that plain-tiff had an unobstructed view *of the crossing* and the stop sign for several hundred feet prior to the impact. This argument is of course not determinative of the question whether or not plaintiff could see the engine as it approached the crossing,[3] and it is not disputed that by the time the engine actually entered the crossing it was too late for plaintiff to stop.

Sustaining, as we do, the district court's finding that this crossing under these circumstances was unusual and dangerous, we now examine its finding that the warning given was inadequate. We begin with the principle that failure to stop at a railroad crossing as required by law "shall not of itself defeat recovery, and the question of negligence or the violation aforesaid shall be left to the jury, and the comparative negligence statutes and prima facie statute of this state shall apply in these cases as in other cases of negligence." Miss.Code Ann. § 77–9–249 (1972).[4]

The district court made no finding as to whether or not the red flashing light was in operation at the time of the collision. It concluded, however, that even if the light was operating, sufficient warning was not given.[5] The district court's conclusion that plaintiff did not hear the horn or the bell was not clearly erroneous, since there was testimony that plaintiff's car windows were rolled up and that he had his car radio in operation.

Finding that the horn was sounding and the bell was ringing but that plaintiff did not hear them, and assuming that the red flashing light was working, the district court ruled that these warnings were not sufficient under the circumstances. We hold that under Mississippi precedent this conclusion was not in error.

In *Illinois Central R. Co. v. Sanders*, 229 Miss. 139, 90 So.2d 366 (1956), the Mississippi Supreme Court considered a crossing accident wherein the motorist victim had dis-

---

**3.** This difference distinguishes *Russell v. Mississippi Central R. Co.*, 239 Miss. 741, 125 So.2d 283 (1960), a classic "occupied crossing" case.

**4.** See n. 1, *supra*.

**5.** We need not, therefore, consider defendant's argument that the evidence compelled a finding that the red light was flashing.

regarded a red flashing warning light, apparently of the conventional type. The conclusion of the court in *Sanders* was that the motorist "doubtless" saw the flashing red signal but that the placement of the signal may have been confusing:

"There is no substantial conflict in the testimony in regard to the fact that the automatic flashing signals were in operation at the time Sanders went onto the track, but the one on the east side of the track was at least 40 feet from the track on which the train struck the Sanders truck, and if he was very close to this track when he started to move on across the crossing, then the automatic flashing signal would have been behind him at that time. From where Sullivan was he could see both of these automatic signals flashing at the time he saw the train approaching from the south. There was a sign on each of them which read 'Stop on Red Signal.' Lingle could have seen the sign as he approached it from the west side of the crossing, but it was not shown that the one on the east side of the crossing was between Sanders and the east main line at the time he undertook to cross the same. But doubtless it was operating when he passed it."

90 So.2d at 368. In *Sanders* there was testimony that horn and bell signals may have been given but that they were not heard by a witness who was driving a car behind the victim's car at the time of the collision, as well as testimony that the train was traveling at a high rate of speed, and that the victim's view of the train may have been obstructed by buildings and boxcars. Under those circumstances, the Mississippi Supreme Court affirmed an award of damages to plaintiff:

"The conflict in the testimony as to the speed of the train and as to the giving of the statutory signals [sounding of the horn and ringing of the bell], when considered in connection with the alleged obstruction of the view of Sanders by the packing shed, by the depot building, and by the two boxcars along the west side of the packing shed, tending to show that he could not have seen the train until it had approached so near him that he was in the act of crossing the track before he could have seen the same by the exercise of reasonable care under all of the circumstances, presented an issue of fact for the jury as to whether or not the negligence of the Railroad Company was a concurring or contributing cause of the accident.

"It is true that it was clearly shown that the automatic flashing signals located on each side of the tracks at the crossing were in operation at the time of the accident, but when it is considered that the one on the east side was 40 feet from the track (and which the jury could have believed from the evidence was behind Sanders when he stopped his truck and then started it up again) together with the fact that the testimony of the witnesses for the plaintiff was to the effect that the automatic flashing signals and bell or gong were frequently in operation when there was no train presently approaching the crossing, there was presented to the jury the further issue of determining to what extent the decedent was negligent under the unusual situation confronting him."

90 So.2d at 369–370.

■ The most obvious distinction between the instant case and *Sanders* is that in *Sanders* plaintiff's decedent actually stopped before proceeding across the tracks. 90 So.2d at 367. Failure to stop, however, while it might go to reduce plaintiff's recovery under comparative negligence, does not as a matter of law excuse any negligence of defendant railroad. *Sanders* stands for the proposition that under Mississippi law disregard of a red flashing warning signal will not necessarily defeat recovery against a railroad in a crossing accident. The finding in the instant case, that the engine was insufficiently illuminated making it difficult to see, may be. compared to the testimony in *Sanders* that the motorist's view was obstructed. The finding of the district court in the present case that the red light did not appear to be a railroad crossing warning may be com-

pared to the fact in *Sanders* that the signal was placed at a possibly confusing distance from the tracks, since both facts relate to possible confusion of the plaintiff. Finally, the testimony in *Sanders* that the train may have been traveling at high speed may be compared to the undisputed testimony in the present action that the defendant railroad and its train crew were aware that the crossing had been the scene of "near misses" in the past and that defendant's fireman had the car under observation for over 300 feet. In both cases, that is, there were circumstances suggesting to the train crew a situation of unusual danger.

Defendant railroad has cited *Gulf, Mobile & Ohio R. Co. v. Grubbs*, 260 So.2d 837 (Miss.1972), as authority for the proposition that the train crew had a right to assume that plaintiff would stop on signal. In *Grubbs*, however, there was apparently no evidence suggesting that the crossing was either dangerous or unusual. In such a case, "the trainmen had a right to assume that appellee would stop at the 'Stop' sign, as required by law." 260 So.2d at 839. Nor was there any finding of unusual danger in the two cases referred to by the *Grubbs* court. *New Orleans & N.E.R. Co. v. Burge*, 191 Miss. 303, 2 So.2d 825 (1941), and *Illinois Central R. Co. v. Smith, supra*. In a case of unusual and dangerous crossing, however, the railroad cannot be excused from liability simply because it relied upon the motorist to stop in response to signals that have been found to be inadequate under the circumstances.

Finally, the railroad contends that the district court improperly relied upon the presumption established by statute in Mississippi as follows:

> "in all actions against railroad corporations . . . proof of injury inflicted by the running of engines . . . shall be prima facie evidence of the want of reasonable skill and care of such railroad corporation . . . ."

Miss.Code Ann. § 13–1–119 (1972). The extent of the burden placed upon a railroad by this statute appears to be in doubt under the relevant decisions of the Mississippi Su-

preme Court. The majority of the reported decisions hold that when the facts surrounding an injury are shown, the presumption of § 13–1–119 vanishes, leaving the burden of proof on the plaintiff. See, *i. e., Taylor v. Illinois Central R. Co.*, 200 Miss. 571, 27 So.2d 894 (1946). That viewpoint was adopted by a panel of our Court in *Alabama Great Southern R. Co. v. Allied Chemical Corp.*, 501 F.2d 94, 99 (5 Cir. 1974).

The district court in the present case, however, adhered to the minority view of the statute's effect, that the burden of proof of freedom from negligence is placed on the railroad. In its original opinion, the district court referred to plaintiff's contention that the burden was thus shifted. In supplemental opinion on remand the district court expressed itself as follows:

> "Plaintiff relied upon the statutory presumption of negligence, Section 13–1–119, Mississippi Code of 1972. To overcome such statutory presumption, the defendant railroad must exculpate itself by establishing to the satisfaction of the trier of facts such facts and circumstances as would relieve it from liability. *Dickerson v. Illinois Central Railroad Company*, 244 Miss. 733, 145 So.2d 913. Plaintiff contends that the defendant failed in its burden, and this Court agreed in its opinion issued December 14, 1974."

421 F.Supp. at p. 489.

No reported Mississippi case has discussed the meaning and effect of § 13–1–119 since the decision of the Fifth Circuit in *Alabama Great Southern, supra*. Therefore, in the absence of a subsequent interpretation of Mississippi law, this Court and the district court are bound by that decision. It was error for the district court in the instant case to rely on *Dickerson*, which was rejected, albeit implicitly, in *Alabama Great Southern*. However, it is the opinion of this Court that the error was harmless. An examination of the two opinions of the district court shows that it affirmatively found that the train crew, with knowledge that the crossing was dangerous, relied for too long upon inadequate warnings, and that, "in the exercise of reasonable care, the

fireman should have initiated an emergency stop sooner than he did." [6] This finding is not clearly erroneous and requires no aid from a presumption to fix liability on the railroad.

■ No finding was made below which justifies the imputation of liability to defendant J. I. Brown, Jr., the engineer. The testimony at trial was that he could not see the approach of plaintiff's car from his position on the north front portion of the engine, which was backing toward the crossing as plaintiff approached from the south. The district court found that the *fireman* should have called for a stop sooner. The court made no finding that defendant Brown, the engineer, should have acted more quickly. There was no evidence to suggest that Brown was responsible for the inadequacy of warning. Under these circumstances, it was error to impose liability on defendant Brown.

### PART II.  Contributory Negligence of Plaintiff

■ The trial court found that plaintiff was contributorily negligent in that (1) he was traveling with his automobile windows closed and his car radio playing, which could have made in difficult for him to hear any warning bells or horns; and (2) he failed to stop in obedience to the crossing stop sign. Under Mississippi comparative negligence, failure to stop at a railroad crossing as required by law may, but need not, be negligence. The question is one for the finder of fact. *New Orleans & N.E.R. Co. v. Weary*, 217 So.2d 274, 277 (Miss.1968). Plaintiff has asserted that he failed to come to a stop because of a second sign attached to the crossing stop sign, reading "Stop on Flashing Red Signal," claiming that he saw

no such signal. While the district court found that plaintiff saw such a sign on the other side of the tracks on an earlier trip, plaintiff testified that he did not see such a sign on the night of the collision, and photographs taken two days later suggested that in fact no such second sign was visible on that night. In any event, the Mississippi Supreme Court has taken the view that a motorist may be found negligent in failing to stop at a railroad stop sign even though he relied upon the absence of greater warnings usually employed at a particular crossing. *New Orleans & N.E.R. Co. v. Ready*, 238 Miss. 199, 118 So.2d 185 (1960).[7] We conclude that the trial judge's finding of contributory negligence is supported by the evidence.

### PART III.  Last Clear Chance

Plaintiff contends that, although the district judge's Supplemental Opinion specifically disavows such a finding, nevertheless, the findings of the court below necessarily imply that defendant railroad had the last clear chance to avoid the accident. He also contends that the evidence demands such a finding, and that consequently his recovery should not have been reduced on account of contributory negligence.

Since 1910 Mississippi has followed the rule of comparative negligence. There is considerable dispute among American jurisdictions as to whether the last clear chance rule continues to operate when the doctrine of comparative negligence is in force.[8] This Court in *Illinois Central R. Co. v. Underwood*, 235 F.2d 868, 874 n. 13 (5 Cir. 1956), stated that in Mississippi the last clear chance doctrine "loses most of its meaning and importance" because of comparative negligence [*i. e.*, defeating the harsh rule of

---

6. This is not to say that the fireman did in fact realize the danger earlier than the moment he called for a stop, nor does it imply that defendant had the last clear chance to avoid the impact. See Part III, *infra*.

7. In *Ready*, plaintiff testified that "he was looking for one thing only, and that was a flagman with a lantern; that there was usually a flagman there  .  .  .  and in the absence of the flagman he just kept going across the tracks."

118 So.2d at 188. Nevertheless, the Mississippi Supreme Court did "not hesitate to say that the evidence shows [plaintiff] was guilty of negligence contributing to the collision." Id. at 187.

8. See Anno.: Application of last clear chance in comparative negligence cases, 59 A.L.R.2d 1262, and cases cited in A.L.R.2d Later Case Service.

no recovery in contributory negligence cases], but implied that it still exists.

Even assuming, however, as we think probable, that the last clear chance doctrine remains in force in Mississippi in comparative negligence cases, it can have no effect on the present case. The conclusion of the district court was that the fireman *should have* stopped the train sooner after noticing the approaching automobile. This conclusion was based, as we have shown above, on the findings that the crossing was known to be dangerous and the warnings given were inadequate, so that the fireman was not justified in assuming as long as he did that the car would stop. These facts, however, would not be sufficient to establish that the fireman had the last clear chance to avoid the accident. There was no compelling evidence establishing that there existed a time during which plaintiff was helpless while the train crew were not;[9] yet a helpless plaintiff and a "then existing" opportunity for the defendant to avoid the harm are necessary requirements for the operation of the rule of last clear chance.[10] It is therefore clear that the district court's conclusion that the railroad was negligent does not necessarily involve the finding, disavowed by the court, that the railroad had a last clear chance to avoid the collision. It is also clear that the evidence did not compel such a finding.

We conclude that the district court committed no reversible error in determining that (1) defendant railroad was negligent, (2) plaintiff was equally negligent, and (3) the railroad did not have the last clear chance to avoid this accident. However, we conclude that the district court was in error in imposing liability on defendant Brown. The judgment of the district court is affirmed as to the defendant Missouri Pacific Railroad Company and reversed as to the defendant J. I. Brown, Jr. Costs of appeal are taxed against defendant-appellant Missouri Pacific Railroad Company.

AFFIRMED IN PART AND REVERSED IN PART.

CLARK, Circuit Judge, concurring in part and dissenting in part:

I concur in the reversal of the judgment against Engineer Brown. I respectfully dissent from the affirmance of the judgment against the defendant railroad. The physical facts are clearly established. The scene is just a plain, ordinary rural grade crossing of a relatively level, straight road by a single track. It is neither unusual nor dangerous to anyone exercising minimal care. Its total conditions are there for all who will look to see. Moreover, plaintiff already knew the crossing was there. If those who know must still be warned, it was enough that the railroad had supplemented the standard stop sign with a flashing red light signal which the court assumed was working properly. Under the Rules of the Road, this signal had only one message for the plaintiff—stop!

As the majority points out, the railroad's fireman who saw plaintiff's approach had the legal right to assume he would stop until the fireman reasonably concluded he would not. The undisputed physical facts attest that at the moment it became apparent that plaintiff was heedless of the train, the engine was at the edge of the roadway and bound by inertia to continue along its fixed course. Under applicable principles of Mississippi law, the district court's findings that plaintiff negligently drove his automobile into the engine without looking, listening or stopping fixed, not a contributory but, the sole proximate cause for the collision.

The district court's conclusion that the plaintiff hit the train because he couldn't see it is not borne out by the facts. When he left Reba's roadhouse at 2 a.m. after the proverbial "two beers" and drove the short

---

**9.** Although evidence was introduced as to plaintiff's rate of speed, no evidence was presented as to the distance from the tracks at which plaintiff *first* became helpless to stop his vehicle.

**10.** See Restatement of Torts 2d, § 479(a) and (b).

distance back across these tracks, the plaintiff consciously or unconsciously chose to play Russian roulette with the crossing. He lost. This is where I would have left the matter.